IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 108,684

STATE OF KANSAS,
*Appellee*,

v.

FELIPE D. HERNANDEZ,
*Appellant*.

SYLLABUS BY THE COURT

1.

The propriety of a district court's denial of an inmate's motion for forensic deoxyribonucleic acid (DNA) testing pursuant to K.S.A. 21-2512, which is based upon a nonevidentiary hearing, is a question of law subject to unlimited review.

2.

An inmate in state custody after a conviction for rape, who states a belief that biological material exists that can be tested for DNA, which allegation is not contested by the State, is qualified to petition for such DNA testing, so long as the alleged biological material (1) is related to the investigation or prosecution that resulted in the conviction; (2) is in the actual or constructive possession of the State; and (3) was not previously subjected to DNA testing or can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results.

3.

The court shall order DNA testing pursuant to a petition made under K.S.A. 21-2512(a) if it determines that testing may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or

1

sentenced. K.S.A. 21-2512 does not require the petitioner to show with certainty that the testing will produce noncumulative, exculpatory evidence; the statute does not require the petitioner to make specific allegations as to precisely how the DNA testing will produce noncumulative, exculpatory evidence; nor does the statute require the introduction of any DNA evidence at petitioner's trial.

4.

Evidence is exculpatory if it tends to disprove a fact in issue which is material to guilt or punishment. Defining exculpatory evidence is not a function of weighing the evidence. Evidence may be exculpatory without being definitively exonerating.

5.

The determination of whether there is a substantial question of petitioner's innocence is not a precursor to ordering DNA testing under K.S.A. 21-2512(c), but rather that determination is appropriate upon the receipt of inconclusive test results, as set forth in K.S.A. 21-2512(f)(3).

Review of the judgment of the Court of Appeals in an unpublished opinion filed November 8, 2013. Appeal from Sedgwick District Court; ANTHONY J. POWELL, judge. Opinion filed January 15, 2016. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed and remanded with directions.

*Janine Cox*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Julie A. Koon*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Felipe D. Hernandez appeals the district court's denial of his K.S.A. 21-2512 petition for postconviction DNA testing. Because we hold that Hernandez satisfied his initial burden under K.S.A. 21-2512(a) and (c), we reverse and remand for a hearing utilizing the correct legal standards.

FACTUAL AND PROCEDURAL OVERVIEW

In 2003, a jury found Hernandez guilty of one count of rape, two counts of aggravated criminal sodomy, one count of domestic battery, two counts of criminal threat, and one count of aggravated battery. The jury found Hernandez not guilty on a third count of aggravated criminal sodomy. The rape, aggravated criminal sodomy, and aggravated battery victim was Hernandez' then 13-year-old daughter, C.H.

C.H.'s sexual abuse allegations came to light as the result of a series of violent episodes in the Hernandez home, commencing on a Friday evening. Hernandez confronted C.H. about two absences from school, and, when C.H. refused to explain the absences, Hernandez hit her multiple times. When Hernandez' wife, Maria, tried to intervene, Hernandez hit her. Eventually, C.H. said she missed school to spend time with her boyfriend. Later that evening, Hernandez hit C.H. again and threatened to kill C.H. and Maria. C.H. asked Maria not to go to work the next day, explaining that when Maria went to work on Saturdays, Hernandez sexually abused her.

The following morning, C.H.'s older sister, Brenda, called the police because Hernandez was hitting and threatening to kill her, Maria, and C.H. The police arrived and took Hernandez into custody. The police called an ambulance to take C.H. to a hospital.

3

Detective Loren Johnson of the Wichita Police Department's Exploited and Missing Children's Unit was in charge of Hernandez' case. The detective met with C.H. at the hospital, where she told him that Hernandez had physically and sexually abused her. Detective Johnson then began recording the interview.

Detective Johnson submitted a sworn affidavit detailing the interview, in which C.H. told him that Hernandez had been sexually assaulting her for a year and a half. C.H. said the sexual assaults included sexual touching, Hernandez placing his mouth on C.H.'s vagina, C.H. placing her mouth on Hernandez' penis, and Hernandez placing his penis inside her vagina and buttocks. C.H. said the assaults took place in her bedroom and on Hernandez' bed. The affidavit further recited that "CH believed Felipe had intercourse with her at least seven (7) times total." She said the last incident of penile-vaginal penetration occurred 2 weeks prior to the interview, in her bedroom, and that Hernandez had worn a condom. C.H. explained that Hernandez kept condoms in his vehicle.

A cassette audiotape of Detective Johnson's interview with C.H. was admitted into evidence and played for the jury, but it is not included in the record on appeal. Detective Johnson's trial testimony related that C.H. stated that the last sexual assault took place approximately 2 weeks prior to the interview and occurred in C.H.'s bed.

C.H. told her doctor that Hernandez had sexually abused her for the past year and a half. But she also related that she had engaged in intercourse with her boyfriend. The doctor testified that C.H.'s pelvic exam did not reveal any signs of trauma; however, the exam was consistent with the history C.H. provided.

Maria gave the police permission to search the family's home. During that search, a crime scene investigator (CSI) collected one sheet from C.H.'s bed, towels from C.H.'s room, and bedding from the master bedroom, where Maria and Hernandez slept. The CSI

did not use a UV light when processing the bedrooms, but she folded C.H.'s sheet inward so as to not lose any potential evidence. Detective Johnson testified that, because the last incident of sexual assault was 2 weeks earlier and Hernandez wore a condom, the police did not submit the bedding for DNA testing.

The police obtained a search warrant for Hernandez' truck and found an opened condom box containing one unused condom. Maria testified that she and Hernandez did not use condoms.

At trial, C.H. testified Hernandez began sexually abusing her when she was 13 years old, explaining that the abuse included sexual touching, Hernandez touching her vagina with his mouth three to four times in her bedroom, and Hernandez inserting his penis into her "bottom" two to four times without using a condom. C.H. related details about a specific instance of penile-anal penetration in her sister's bedroom. She said the first time Hernandez inserted his penis into her vagina, they were on her bed and Hernandez used a condom. She did not discuss other specific instances of penile-vaginal penetration. Nevertheless, she said Hernandez "never conserved any condoms that he used," which implies more than one act of penile-vaginal penetration occurred. C.H. said Hernandez would flush used condoms down the toilet.

Hernandez did not testify in his own defense. In closing argument, defense counsel admitted Hernandez hit C.H. and asserted C.H. fabricated the sexual abuse allegations against Hernandez to stop the physical abuse. As previously noted, the jury found Hernandez guilty of rape, battery, aggravated battery, and two counts each of aggravated criminal sodomy and criminal threat, but acquitted him on a third count of aggravated criminal sodomy.

Hernandez directly appealed his convictions, claiming, *inter alia*, that insufficient evidence supported his rape and aggravated criminal sodomy convictions. *State v. Hernandez*, No. 91,434, 2005 WL 81492 (Kan. App.) (unpublished opinion), *rev. denied* 279 Kan. 1008 (2005). The Court of Appeals recognized that the State's case against Hernandez "rest[ed] mainly on the credibility of the witnesses." 2005 WL 81492, at *3. Nevertheless, the panel held that viewing the evidence in the light most favorable to the State, "[t]he evidence was more than adequate" to find Hernandez guilty beyond a reasonable doubt. 2005 WL 81492, at *3.

Following his direct appeal, Hernandez filed a K.S.A. 60-1507 motion, claiming he never agreed to a guilt-based defense on his aggravated battery charge. The Court of Appeals affirmed the district court's denial of Hernandez' motion. *Hernandez v. State*, No. 99,921, 2009 WL 1858244 (Kan. App. 2009) (unpublished opinion), *rev. denied* 290 Kan. 1093 (2010).

In 2011, Hernandez filed a pro se petition, pursuant to K.S.A. 21-2512, seeking postconviction forensic DNA testing of (1) blankets and sheets, (2) towels, and (3) a box of new condoms. The State's response enumerated the charges against Hernandez and cited to Detective Johnson's affidavit and the CSI's report in discussing the sexual abuse allegations and investigation. The State confirmed that the items enumerated in Hernandez' petition "appear to have remained in the custody of the Wichita Police Department to the present."

The district court appointed counsel to represent Hernandez and conducted a nonevidentiary hearing, after which the district court denied the petition. The Court of Appeals affirmed the district court. *State v. Hernandez*, No. 108,684, 2013 WL 5976061 (Kan. App. 2013) (unpublished opinion). We granted Hernandez' petition for review.

6

Hernandez argues on appeal that the district court read the provisions of K.S.A. 21-2512 and accompanying caselaw too narrowly when it denied his motion on the facts of this case. Specifically, he argues the district court erred in denying the motion to test C.H.'s and Hernandez' bedding.

*Standard of Review*

The district court's denial of a K.S.A. 21-2512 motion for DNA testing after a nonevidentiary hearing is a question of law subject to unlimited review. See *State v. Johnson*, 299 Kan. 890, 892, 327 P.3d 421 (2014).

*Analysis*

First, we need to clarify the items upon which Hernandez seeks testing. The Court of Appeals stated that, "[a]s he did in the district court, Hernandez limits his arguments on appeal to the DNA testing of the sheets." *Hernandez*, 2013 WL 5976061, at *1. But Hernandez' petition to the district court, even as it may have been narrowed by his brief on appeal, is sufficient to preserve his claim that DNA testing should have been conducted on C.H.'s sheet, Hernandez' sheets, and Hernandez' comforter.

With these items in mind, we turn to the language of K.S.A. 21-2512, which provides the procedure for the district court to follow upon receiving a petition for DNA testing, to-wit:

> "(a) Notwithstanding any other provision of law, a person in state custody, at any
> time after conviction for murder as defined by K.S.A. 21-3401, and amendments thereto,
> or for rape as defined by K.S.A. 21-3502, and amendments thereto, may petition the court

that entered the judgment for forensic DNA testing (deoxyribonucleic acid testing) of any biological material that:

(1) Is related to the investigation or prosecution that resulted in the conviction;

(2) is in the actual or constructive possession of the state; and

(3) was not previously subjected to DNA testing, or can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results.

"(b)(1) The court shall notify the prosecuting attorney of a petition made under subsection (a) and shall afford the prosecuting attorney an opportunity to respond.

(2) Upon receiving notice of a petition made under subsection (a), the prosecuting attorney shall take such steps as are necessary to ensure that any remaining biological material that was secured in connection with the case is preserved pending the completion of proceedings under this section.

"(c) The court shall order DNA testing pursuant to a petition made under subsection (a) upon a determination that testing may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced.

. . . .

"(e) The court may at any time appoint counsel for an indigent applicant under this section."

Under the plain language of the statute, we need go no further than to simply observe that Hernandez met the first qualification for testing because he was in state custody after a conviction for rape.

The statute then recites that the qualifying inmate can petition for DNA testing "of any biological material." K.S.A. 21-2512(a). There is an apparent split of authority in our Court of Appeals on whether this means that a petitioner bears the burden to prove the existence of biological material on the items to be tested, *i.e.*, whether an inmate is entitled to a test to establish the absence of any biological material. Compare *State v. Lingenfelter*, No. 105,551, 2012 WL 687836, at *2 (Kan. App. 2012) (unpublished

8

opinion) ("In short, to proceed under K.S.A. 21-2512, the petitioner must point to some information at the very least indicating there is biological material to be tested."), *rev. denied* 296 Kan. 1133 (2013); with *State v. Smith*, 34 Kan. App. 2d 368, 372, 119 P.3d 679 (holding petitioner's failure to claim collection of biological evidence not fatal because "criminal defendant—especially one whose case is resolved by a guilty plea—may remain unaware of the extent, if any, that biological evidence has been collected and may be available for testing"), *rev. denied* 280 Kan. 990 (2005).

But we need not resolve that question here. Hernandez' petition recited that the items to be tested were "believed to contain biological material." The State's response did not refute the existence of biological material, but rather it noted that the CSI's report indicated possible DNA evidence on C.H.'s sheet and Hernandez' comforter. Moreover, at the jury trial, the CSI did not dispute defense counsel's assertion that there was a potential for DNA on the collected items. Accordingly, we move on to the next steps in the process.

When a qualified inmate requests DNA testing on biological material, the statute lays out three initial steps the district court is to follow:

> "(1) notify the prosecuting attorney that a petition has been made under K.S.A. 21-2512(a); (2) determine whether the biological material sought to be tested qualifies for testing under K.S.A. 21-2512(a)(1)-(3); and (3) determine whether testing may produce noncumulative, exculpatory evidence relevant to the petitioner's claim of wrongful conviction or sentencing. In performing the second and third steps, the district court must assess whether to appoint counsel for an indigent applicant, as provided by K.S.A. 21-2512(e), and whether an evidentiary hearing is required." *State v. Lackey*, 295 Kan. 816, 820-21, 286 P.3d 859 (2012).

The district court completed step one, as evidenced by the State's response to Hernandez' petition.

Under the second step of determining whether the biological material qualifies for testing,

> "[t]he statute merely requires the prisoner to allege that the evidence is related to the investigation or prosecution of his or her conviction [subsection (a)(1)], that the State has possession or constructive possession of the evidence [subsection (a)(2)], and that the evidence was not previously subjected to DNA testing or that it could be tested using new DNA testing techniques [subsection (a)(3)]." *Bruner v. State*, 277 Kan. 603, 606, 88 P.3d 214 (2004).

We have held that subsection (a)(1) "is to be read broadly to include any material related to either the investigation or the prosecution; it is not limited to the evidence that was actually introduced at trial." *Lackey*, 295 Kan. at 821 (citing *Wimbley v. State*, 292 Kan. 796, 810, 275 P.3d 35 [2011]). Hernandez easily clears this hurdle, as the bedding was seized from Hernandez' home during the investigation of C.H.'s abuse allegations.

Likewise, Hernandez also has no trouble with subsection (a)(2), as the State's response to the petition reported that the items on which Hernandez requested testing "appear to . . . remain[] in the custody of the Wichita Police Department." And under subsection (a)(3), the district court found no indication that the evidence had been previously submitted for DNA testing.

The contested issue in this case is under step three, statutory subsection (c), which provides: "The court shall order DNA testing pursuant to a petition made under subsection (a) upon a determination that testing may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully

10

convicted or sentenced." K.S.A. 21-2512(c). In challenging the petition in the district court, the State asked the court to summarily deny the testing because there was no reasonable likelihood that Hernandez' DNA would be found on the sheets because the victim testified that Hernandez always used a condom when he raped her. Therefore, an absence of Hernandez' DNA would not provide a reasonable basis to believe that the jury would not have found him guilty. Additionally, the State asserted that, "if we were to do the testing, most likely what we would find is his DNA and her DNA."

The State's first argument—that there was no reasonable likelihood of finding Hernandez' DNA on the sheets—was both factually and legally infirm. Factually, the alleged sexual intercourse with a condom was not the only type of sexual abuse that C.H. alleged. She testified that Hernandez touched her vagina with his mouth in her bedroom three to four times. C.H. also said Hernandez performed anal intercourse *without a condom* on two to four occasions, and she only explicitly tied one of the acts to a specific location (her sister's bedroom). Moreover, we have recognized that biological material other than semen may be present on items sought to be tested which may produce exculpatory DNA evidence. See, *e.g.*, *State v. Rodriguez*, 302 Kan. 85, 88, 350 P.3d 1083 (2015) (discussing DNA testing on semen, blood, saliva, and hair; noting that crime lab analyst explained "the mouth and vagina slough a significant amount of cellular material"). Further, Hernandez is not the only person whose DNA, or lack thereof, may have provided exculpatory evidence, as discussed below.

Legally, the State suggests that the statute requires the petitioner to show with certainty that the requested testing will produce noncumulative exculpatory evidence. But that is not the standard. K.S.A. 21-2512(c) says that "[t]he court *shall* order DNA testing" if the "testing *may* produce noncumulative, exculpatory evidence." (Emphasis added.)

11

In the same vein, the State's other arguments—that the absence of Hernandez' DNA would not have changed the verdict and that the most likely result of testing would be to find the inculpatory circumstance of revealing both Hernandez' and C.H.'s DNA together—invited the district court to apply an incorrect standard with regard to testing. In *Lackey*, we attempted to explain the standard as follows:

"[W]e previously, and rather explicitly, rejected the notion of defining exculpatory evidence under K.S.A. 21-2512(c) as being a function of weighing evidence. See *Bruner*, 277 Kan. at 606 (plain statutory language does not limit DNA testing to cases where evidence not overwhelming). In the context of a prosecutor's obligation to disclose exculpatory evidence, we have said that '"[e]vidence is exculpatory if it tends to disprove a fact in issue which is material to guilt or punishment."' *State v. Aikins*, 261 Kan. 346, 382, 932 P.2d 408 (1997) (quoting *State v. Carmichael*, 240 Kan. 149, 153, 727 P.2d 918 [1986]). Additionally, Black's Law Dictionary 637 (9th ed. 2009) defines exculpatory evidence as '[e]vidence *tending* to establish a criminal defendant's innocence.' (Emphasis added.) Finally, and most compelling, *Haddock v. State*, 295 Kan. 738, 759, 286 P.3d 837 (2012), specifically acknowledged that evidence may be exculpatory without being exonerating." 295 Kan. at 823.

Likewise, the State's argument asked the district court to jump ahead in the process, essentially conflating the determination of whether to order testing with the determination of what the jury would likely do with the test results. As we explained in *Lackey*:

"Under [subsection (f) of K.S.A. 21-2512], the district court may well be called upon to weigh the evidence to make a 'probabilistic determination about what reasonable, properly instructed jurors would do' with the new evidence in light of the totality of the circumstances. *Haddock*, 295 Kan. at 769. But the statute does not contemplate that exercise of discretion in determining whether to order the testing in the first instance." 295 Kan. at 824.

12

Hernandez' counsel did not point out to the district court that the State was arguing for the application of an incorrect legal standard. To the contrary, defense counsel contributed to the misdirection of the court by emphasizing that the prosecution had not presented any DNA evidence at the trial and by advising the court that his client had not responded to counsel's request for an explanation as to what Hernandez was hoping to show through the testing.

In summarily denying the testing request, the district court relied on both propositions, *i.e.*, that no DNA evidence was presented at trial and that Hernandez did not provide his counsel with a specific explanation as to how the DNA testing would produce noncumulative exculpatory evidence. Both reasons are refuted by our holdings in *Bruner*. With respect to the absence of DNA evidence at trial, *Bruner* opined that the statute required testing, even where the trial evidence was circumstantial and where "no part of the circumstantial evidence [was] biological." 277 Kan. at 606; see also *Wimbley*, 292 Kan. at 810 (holding the district court erred in finding that defendant could not obtain testing of biological material because the State had not presented that evidence at trial).

With respect to Hernandez' failure to provide his counsel with an explanation of how the DNA testing would produce noncumulative exculpatory evidence, the district court apparently overlooked the following from *Bruner*:

> "K.S.A. 2003 Supp. 21-2512 does not require the prisoner to make specific allegations regarding how the DNA testing would produce noncumulative, exculpatory evidence. The statute merely requires the prisoner to allege that the evidence is related to the investigation or prosecution of his or her conviction, that the State has possession or constructive possession of the evidence, and that the evidence was not previously subjected to DNA testing or that it could be tested using new DNA testing techniques. K.S.A. 2003 Supp. 21-2512(a).
> . . . .

13

"We find that Bruner's failure to include specific assertions regarding what noncumulative, exculpatory evidence would be produced is not fatal to his request for DNA testing.

"We conclude that under the facts before us, the district court should have appointed counsel and conducted an evidentiary hearing. While some aspects of K.S.A. 2003 Supp. 21-2512 might allow a 'fishing expedition,' we must conclude such an expedition is one the legislature has concluded is worth conducting. Presently, the requirements of K.S.A. 2003 Supp. 21-2512(a) will limit the hearing's scope, and a request for DNA testing will be determined on a case-by-case basis." 277 Kan. at 606.

See also *Lackey*, 295 Kan. at 824 ("The district court is charged with the responsibility of assessing the exculpatory and cumulative nature of each item proposed to be tested."). That responsibility is not fulfilled by unsupported statements, such as declaring that long-term inmates with "time on their hands" are "throwing up mud up against the wall and hoping something sticks" and that an inmate "sees in the statute that he's got some right to DNA testing, so it doesn't cost him anything to ask for it."

In short, the district court applied incorrect legal standards by requiring that DNA had to have been proffered by the State at trial and requiring the petitioner to make specific allegations as to how DNA testing would provide noncumulative exculpatory evidence. It should have restricted its analysis to the question of whether the "testing may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced." K.S.A. 21-2512(c).

Moreover, as Hernandez points out, the district court's reliance on *Smith* to support summary denial on the merits is misplaced. In *Smith*, the petitioner admitted to engaging in sexual intercourse and sodomy with the victim but claimed the acts were consensual. As the *Smith* panel observed, "DNA testing is intended to confirm or dispute the identity of individuals involved in or at the scene of a purported crime," but such testing could not

14

provide evidence of consent, *i.e.*, could not generate noncumulative exculpatory evidence. 34 Kan. App. 2d. at 373-74. In the instant case, Hernandez denies engaging in the sex acts with C.H., so that the identity of the individuals involved in the crime could be exculpatory. Simply put, *Smith* is not on point.

The Court of Appeals opined that it did not need to address the district court's application of caselaw because it summarily concluded that the district court correctly found that DNA testing could not produce exculpatory evidence, explaining:

> "Hernandez asked that the sheets be tested for his DNA, his wife's DNA, and C.H.'s DNA. The discovery of Hernandez' DNA on the sheets would have been detrimental to his defense. But the absence of Hernandez' DNA on the sheets would not tend to prove or disprove any fact at issue that was material to his guilt or innocence. Likewise, the presence or absence of C.H.'s DNA or the wife's DNA on the sheets would not have disproved C.H.'s allegations against Hernandez." 2013 WL 5976061, at *3.

As noted earlier in this opinion, evidence can be exculpatory without being exonerating. To be exculpatory evidence, it need not definitively prove the petitioner's innocence but only tend to prove a disputed material fact. Moreover, we disagree with the panel's assessment that the absence or presence of DNA from Hernandez, his wife, and/or C.H., in whatever combination, or in conjunction with third party DNA, could never tend to prove or disprove the materially disputed fact that sex acts between Hernandez and C.H. occurred in his bed or her bed. For instance, the presence of DNA from Hernandez and/or his wife on their bed, coupled with the absence of C.H.'s DNA, would tend to disprove that Hernandez sexually abused C.H. on that bed. Similarly, the presence of DNA from C.H. and/or her boyfriend on her bed, without any DNA from Hernandez, would be exculpatory evidence.

15

Again, the impact of the evidence on the jury verdict is to be addressed in subsection (f) of K.S.A. 21-2512, after the test results are obtained. The court has to determine whether the test results are unfavorable to the petitioner, favorable to the petitioner, or inconclusive. If unfavorable, the petition is dismissed. K.S.A. 21-2512(f)(1)(A). If favorable, the court has the option of ordering a hearing and entering any order that serves the interests of justice. K.S.A. 21-2512(f)(2)(A) and (B). If the results are inconclusive, "the court may order a hearing to determine whether there is a substantial question of innocence." K.S.A. 21-2512(f)(3). The determination of whether there is a substantial question of innocence is not a precursor to ordering the testing in the first instance.

Because the district court's summary denial of Hernandez' petition was founded upon its application of incorrect legal standards, the matter is remanded with directions for the court to conduct a hearing utilizing the law as set forth herein and permitting the introduction of evidence, if necessary.

The decision of the Court of Appeals is reversed. The decision of the district court is reversed and remanded with directions.