NOT DESIGNATED FOR PUBLICATION

No. 117,591

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

COY MATHIS,
*Appellant*.


MEMORANDUM OPINION


Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed March 30, 2018. Affirmed.


*Coy Mathis*, appellant pro se.


*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BRUNS, P.J., PIERRON and POWELL, JJ.


PER CURIAM:  Coy Mathis appeals from the district court's denial of his request for DNA testing pursuant to K.S.A. 2017 Supp. 21-2512. In 2001, Mathis was convicted of felony murder of a two-year old boy and his conviction was ultimately affirmed by the Kansas Supreme Court. Specifically, Mathis has requested DNA testing of "any blood, microscopic evidence, and toxicology results" that were "collected before, during, or after the autopsy" of the minor victim. Based on our review of the record and applicable legal authority, we agree that the DNA testing requested by Mathis is not capable of producing exculpatory evidence. Moreover, we find that Mathis' claim that the State violated his

1

constitutional rights prior to trial is procedurally barred. Thus, we affirm the district court's order denying DNA testing.

FACTS

The underlying facts of this case are set forth in the Kansas Supreme Court's opinion in Mathis' direct appeal:

"On November 30, 2000, Ikesia Scruggs (Ikesia) picked up her 2-year-old son, C.S., from day care at approximately 3:50 p.m. C.S. had no apparent injuries at that time. C.S. was active, energetic, and as usual had a big appetite. Ikesia and C.S. spent the next several hours at her grandmother's before picking up Mathis at approximately 7 p.m. When C.S. was put to bed at approximately 9 p.m., he had no visible injuries and appeared fine. Mathis and Ikesia had no visitors that night and went to bed around 11 p.m.

"The next morning, December 1, Ikesia got up at approximately 7:15 a.m., went into C.S.'s room, changed his diaper, and turned on the television in C.S.'s room. C.S. stayed in bed. When Ikesia was ready to go to work, C.S. was still in bed. C.S. had had a cold for approximately a week, but, according to Ikesia, C.S. was his 'normal energetic self.' When Ikesia went to work, rather than taking C.S. to day care, she left C.S. home with Mathis.

"Ikesia worked with a partner cleaning houses in Kansas City and Leavenworth from approximately 8:15 a.m. to 3:50 p.m. on December 1. When she arrived home about 4 p.m., Mathis was lying on the sofa watching television. Ikesia did not see C.S., but thought he was in his bedroom where he stayed when Mathis watched him. Mathis told her that C.S. had been acting like a sissy all day.

"Mathis requested Ikesia to go out and purchase some marijuana for him. She did. Ikesia also bought gas and cashed her check prior to returning to her apartment.

2

"When she returned at approximately 5 p.m., Mathis was in the shower. Ikesia looked in on C.S. [found that he was] limp, and his eyes were rolling. Ikesia observed numerous red dots on C.S.'s belly that had not been there that morning. Ikesia drove C.S. to the hospital.

"C.S. was admitted to the emergency room at Providence Medical Center at 5:32 p.m. C.S.'s breathing was very slow and labored, and he barely had a pulse. C.S. was cyanotic, unresponsive to stimuli, and within minutes suffered a full cardiopulmonary arrest. It took approximately 22 minutes of resuscitation to restore C.S.'s heartbeat and blood pressure. C.S. had bruising on his face, chest wall, abdomen, and back. The bruises did not occur where CPR was performed.

"C.S. was transferred to Children's Mercy Hospital just prior to 8 p.m. on December 1. The admitting doctor noted a significant amount of bruising, including circular bruises on C.S.'s lower chest and upper belly that were not the result of resuscitation. A CT scan performed that night indicated an injury to C.S.'s liver, spleen, and kidney. C.S.'s belly was extended from internal bleeding. C.S.'s injuries were consistent with blunt abdominal trauma, not with falling on a toy or against a table. The trauma was most likely inflicted 6 to 8 hours prior to C.S.'s admission to Providence Medical Center. C.S. died on December 5.

"An autopsy confirmed that C.S. suffered severe internal injuries and internal bleeding. The cause of death was determined to be multiple blunt force blows to the abdomen, delivered with a force comparable to an automobile accident. *State v. Mathis*, 281 Kan. 99, 101-02, 130 P.3d 14 (2006).

A Wyandotte County jury found Mathis guilty of felony murder and not guilty of the remaining count of abuse of a child. The district court sentenced Mathis to life imprisonment with no eligibility for parole for 20 years. 281 Kan. at 100. Ultimately, the Kansas Supreme Court, on appeal, upheld his conviction. 281 Kan. at 111.

In 2003, while his direct appeal was pending, Mathis filed, at different times, a motion with the Kansas Court of Appeals seeking to remand his appeal to the trial court

3

so that he could raise an ineffective assistance of counsel issue and a K.S.A. 60-1507 motion with the district court, raising the same ineffective assistance of counsel claim. The Kansas Court of Appeals granted the remand motion, and the district court heard both the ineffective assistance of counsel claim and the K.S.A. 60-1507 motion and ruled against Mathis on both issues. During the direct appeal, the Kansas Supreme Court addressed Mathis' ineffective assistance of counsel claim and upheld the district court's decision. 281 Kan. at 110-11.

After he was unsuccessful on direct appeal and on his K.S.A. 60-1507 motion, Mathis petitioned the United States District Court for the District of Kansas in 2009 for habeas corpus relief under 28 U.S.C. § 2254. *Mathis v. Cline*, No. 07-3049-JWL, 2009 WL 256567 (D. Kan. 2009) (unpublished opinion). In his habeas corpus action, Mathis asserted the same issues—including ineffective assistance of counsel—that he had presented in his direct appeal. 2009 WL 256567 at *1. On February 2, 2009, the Honorable John W. Lungstrum denied Mathis' request for relief. 2009 WL 256567 at *11.

In 2010, Mathis returned to Kansas courts and filed a K.S.A. 60-1507 motion in district court. *Mathis v. State*, No. 107,525, 2013 WL 781111 (Kan. App. 2013) (unpublished opinion), *rev. denied* 298 Kan. 1203 (2013). This time, he claimed that his appellate counsel had been ineffective. 2013 WL 781111, at *1. Both the district court and this court agreed that the K.S.A. 60-1507 motion was barred as untimely. Both courts also agreed that Mathis had failed to show that manifest injustice would result if the courts did not hear his untimely claims. *Mathis*, 2013 WL 781111, at *1, 4.

In 2013, Mathis filed another K.S.A. 60-1507 motion in district court. *State v. Mathis*, No. 112,599, 2015 WL 5774032 (Kan. App. 2015) (unpublished opinion). In his motion, Mathis asserted that the district court had no subject matter jurisdiction over his K.S.A. 60-1507 motion filed in 2003 while his direct appeal was pending before the

4

Supreme Court. *Mathis*, 2015 WL 5774032, at *1. Again, both the district court and this court determined that Mathis' 2013 K.S.A. 60-1507 motion was procedurally barred as being untimely and successive. *Mathis*, 2015 WL 5774032, at *3.

This appeal arises out of a request for postconviction DNA testing pursuant to K.S.A. 21-2512 that Mathis filed in district court on May 20, 2016. In his original petition, Mathis requested that the district court order DNA testing of "any blood, microscopic evidence, and toxicology results" relating to his felony-murder conviction. On May 23, 2016, Mathis amended his petition to clarify that he wanted DNA samples from the minor victim's hospitalization and autopsy to be tested. According to Mathis, he desired to have the DNA tested to determine if the evidence supports his convictions.

On July 18, 2016, the district court denied Mathis' request DNA testing. In the district court's order, it determined "that the DNA testing requested by Mathis would not produce noncumulative, exculpatory evidence relating to the movant's claim that he was wrongfully convicted." Accordingly, the district court concluded that Mathis failed to meet the statutory requirements under K.S.A. 21-2512.

ANALYSIS

On appeal, Mathis contends that the district court erred by denying his K.S.A. 21-2512 postconviction motion for DNA testing without granting him an evidentiary hearing. Mathis argues that he should be entitled to the biological samples from C.S.'s autopsy in order to challenge the time the minor victim suffered the injuries that resulted in his death. On appeal, we have unlimited review of the summary denial of a request for DNA testing under K.S.A. 21-2512. *Wimbley v. State*, 292 Kan. 796, 809, 275 P.3d 35 (2011).

Under K.S.A. 2017 Supp. 21-2512, the petitioner must "allege that the [requested items] related to the investigation or prosecution of his or her conviction, that the State has possession or constructive possession of the evidence, and that the evidence was not previously subjected to DNA testing or that it could be tested using new DNA testing techniques." *State v. Hernandez*, 303 Kan. 609, 618-19, 366 P.3d 200 (2016) (quoting *Bruner v. State*, 277 Kan. 603, 606, 88 P.3d 214 [2004]). Prior to ordering such testing, the district court must determine if the testing "may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced." K.S.A. 2017 Supp. 21-2512(c). Evidence is exculpatory when it tends to prove or disprove a disputed material fact. *Hernandez*, 303 Kan. at 620. However, to be exculpatory, evidence need not definitively prove the petitioner's innocence nor completely exonerate the petitioner. 303 Kan. at 620.

In *Hernandez*, the Kansas Supreme Court found the defendant was entitled to postconviction DNA testing of bed sheets after his conviction for rape. 303 Kan. at 620. In that case, the defendant asked for bed sheets to be tested for his DNA, asserting a lack of his DNA on the sheets would tend to show he did not commit the rape. Our Supreme Court found that the lack of DNA on a particular piece of evidence may provide exculpatory evidence as to an alleged rape. As such, it was error for the district court to deny the request for testing. 303 Kan. at 619-21.

Here, the district court determined the testing that Mathis requests would not produce noncumulative, exculpatory evidence. Specifically, the district court noted "it is difficult to ascertain how noncumulative, exculpatory evidence could result from testing the autopsy items listed in the petition. The items seemingly relate to what caused the death of the child. That issue was not in dispute in the jury trial."

Moreover, the district court found that "the facts supporting [Mathis'] conviction included that [he] was alone with the victim for most of the day when the injuries

6

occurred and that the medical evidence was such that the injuries were not accidental and did not occur when the mother of the child was present." The district court further found that it was "undisputed that Mathis was at the scene of the crime as he was babysitting the child victim. Testing any of the items that Mathis lists would not provide any evidence relating to the presence or non-presence of the DNA of this Defendant as the items all relate to the victim."

We agree with the district court that under the circumstances presented in this case that testing the items requested by Mathis would not produce exculpatory evidence. As our Supreme Court found in Mathis' direct appeal, the autopsy of the 2-year-old victim revealed that he died from "severe internal injuries and internal bleeding" caused by "multiple blunt force blows to the abdomen, delivered with a force comparable to an automobile accident." *State v. Mathis*, 281 Kan. at 102. Thus, it is difficult to envision how further DNA testing could be exculpatory.

Although Mathis also suggests that the State failed to produce exculpatory evidence prior to trial, his argument is difficult to follow. Moreover, he cites to nothing in the record to support this position. The party claiming an error occurred has the burden of designating a record that affirmatively shows prejudicial error. Without such a record, an appellate court presumes the action of the trial court was proper. *State v. Sisson*, 302 Kan. 123, 128, 351 P.3d 1235 (2015).

Next, Mathis asserts that the State failed to properly preserve the biological evidence used against him at trial. Again, Mathis does not cite to anything in the record to indicate that the biological evidence has been destroyed or contaminated. Likewise, he does not identify what duty the State had, if any, to preserve this evidence so many years after the trial.

7

Furthermore, as the State notes, Mathis could have raised his arguments involving pretrial disclosure of evidence or posttrial preservation of evidence in the multiple motions and appeals he has filed previously. Where an appeal is taken from a conviction or sentence imposed, the judgment of the appellate court is res judicata as to all issues actually raised. Issues that could have been raised are also deemed waived. *State v. Kingsley*, 299 Kan. 896, 901, 326 P.3d 1083 (2014). Here, Mathis makes no argument regarding why he did not raise these issues about the State's action prior to trial in any of these appeals.

In addition, constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). There are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). In this present case, Mathis does not assert which—if any—of these exceptions apply in this appeal. See *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016) (An issue not briefed by the appellant is deemed waived or abandoned.).

We, therefore, conclude that the district court did not err in summarily denying Mathis' request for DNA testing under the circumstances presented in this case.

Affirmed.