NOT DESIGNATED FOR PUBLICATION

No. 123,197

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RAYMONE RAPHAEL LEVY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed March 25, 2022. Affirmed.

*Jennifer Bates*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., HILL and ISHERWOOD, JJ.

PER CURIAM: When an offender has been convicted of first-degree murder or rape, Kansas law directs that a district court shall order DNA testing of biological material in the State's possession if that testing may produce noncumulative, exculpatory evidence relevant to a prisoner's claim that the prisoner was wrongfully convicted or sentenced. Raymone Raphael Levy asked a court to order testing of the victim's clothing that she was wearing the day before their encounter that led to his prosecution.

In his view, the *lack* of his DNA on that clothing would be exculpatory and he therefore asks us to overturn the district court's order denying his petition for testing. In other words, he is seeking testing to show there is *no* biological material on the items. We are unpersuaded that the lack of his DNA on items worn by the victim before her encounter with Levy would be exculpatory evidence. The lack of his DNA on these items would not prove or disprove any disputed material fact in his prosecution. We affirm the district court's denial of his petition.

*The jury found Levy guilty of rape of a young girl.*

Levy was convicted of raping his girlfriend's seven-year-old daughter. The girl disclosed to school officials that Levy was sexually abusing her. The victim described the abuse in detail in a recorded interview with a social worker. The victim was given a medical examination the same day she alleged an incident of abuse had occurred. Levy's semen was found inside the girl's underwear.

At Levy's preliminary hearing, the victim did not testify. Instead, the State admitted her recorded interview with the social worker. The social worker testified that the girl first said her "dad" had been abusing her and this led to some early confusion about whether she was referring to Levy or her biological father. But the social worker explained that this uncertainty was resolved when the girl made it clear that Levy was the abuser.

At trial, the girl identified Levy as her abuser and described her abuse. The interview with the social worker was also played for the jury. The girl said the abuse happened every day when her mom went to work. She said the last time it happened was the night before and the next morning when she, at school, disclosed the abuse.

2

Pertinent to this appeal is a shirt and pants the girl was thought to have worn the "day before" she disclosed the abuse. The items were collected by the detective. At trial, the girl did not remember what she was wearing when Levy sexually assaulted her. A detective testified the shirt and pants were not submitted to the KBI for testing because he did not have enough information to believe "that the clothes were related to anything. We never even confirmed that those were the clothes that she had been wearing the day before, let alone the day that this occurred." The detective was unaware of any allegation of abuse that had occurred when the girl would have been wearing that clothing.

For his part, Levy denied any sexual abuse. He offered no explanation for how his sperm made its way into the girl's underwear. He claimed he was out the previous night planning a friend's birthday and did not have contact with the girl. He testified that on that morning, he had masturbated under a blanket on the couch in the living room and, after he finished, the girl came out of her bedroom and sat next to him, but he did not touch her. She was wearing her night clothes.

At trial, the defense argued the girl had made up a story about the abuse. "This little girl was not raped by Raymore [*sic*] Levy or anyone else." The closing arguments are not in the record on appeal. The jury found Levy guilty of rape of a child, aggravated criminal sodomy of a child, and aggravated indecent liberties/lewd fondling with a child. His convictions were upheld on appeal. *State v. Levy*, 292 Kan. 379, 253 P.3d 341 (2011). He is now serving his sentence for his crimes.

*Levy seeks an order for postconviction testing.*

Levy has filed a pro se petition for postconviction DNA testing. The petition did not specify what evidence Levy wanted tested. The district court held a nonevidentiary hearing on the petition at which Levy was represented by counsel. Levy informed the district court that he wanted the girl's underwear retested and her shirt and pants tested.

3

The State conceded the underwear, a red shirt, and a pair of blue jeans were in its custody.

The district court denied Levy's petition. The court held that the underwear did not qualify for testing under K.S.A. 2020 Supp. 21-2512(a) because it was previously tested, and the testing methods had not progressed since that time. We are not concerned with the question of retesting of the underwear in this appeal. The court also noted that the shirt and pants were not the clothes that the girl slept in, but what she had been wearing the day before. The court held the shirt and pants did not qualify for testing because there was no "biological material" to be tested.

*Did the court err when it denied Levy's petition?*

To us, Levy argues that the district court read the applicable statute—K.S.A. 2020 Supp. 21-2512—too narrowly. He contends that the court erred when it concluded that the items to be tested contained no biological material and a court should err on the side of ordering testing. With no further explanation, he simply asserts that the absence of DNA on the shirt and pants would be exculpatory.

In response, the State argues the shirt and pants do not constitute "biological material" under K.S.A. 2020 Supp. 21-2512(a), that Levy never asserted that there was any biological material on the clothing, and that testing to determine whether biological material is present is not DNA testing. The State does not concede that there could be biological material on the clothes. The State alternatively argues that testing could not "produce noncumulative, exculpatory evidence" under K.S.A. 2020 Supp. 21-2512(c).

We consider this to be a question of law subject to unlimited review. *State v. Johnson*, 299 Kan. 890, 892, 327 P.3d 421 (2014). We begin our analysis with an

examination of the appropriate statute. From there, we move on to review the cases that have interpreted that law. And then, we apply the law to the facts leading to this appeal.

*We must first review the law of postconviction DNA testing.*

One Kansas statute permits a person in state custody, at any time after conviction for first-degree murder or rape, to petition a court for "forensic DNA testing (deoxyribonucleic acid testing) of any biological material" that

(1)     relates to the murder or rape investigation or prosecution;

(2)     is in the possession of the State; and

(3)     was not previously subjected to DNA testing or can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate or probative results. K.S.A. 2020 Supp. 21-2512(a).

The statute continues, the court "shall order DNA testing . . . upon a determination that testing may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced." K.S.A. 2020 Supp. 21-2512(c).

Subsection (f)(1) and (f)(2) of the statute set out what a court can do if the results of the testing are unfavorable or favorable to the petitioner.

In short, the statute sets out how a court is to proceed with these cases. A court considering such a petition must first determine whether certain conditions are met, such as the crime of conviction and the existence of any items to be tested. Then, it must decide whether testing may produce noncumulative exculpatory evidence that is relevant. After that, depending on the whether the results are unfavorable or favorable to the petitioner, the court has several options on what it can order.

5

Here, there is no question that Levy is in state custody for a rape conviction and that the shirt and pants were collected during the rape investigation, and that they are in the possession of the State and were not previously subjected to DNA testing. So all of those statutory requirements have been met. This means that the only question before us is, may testing of these items produce noncumulative, exculpatory evidence relevant to Levy's claims of wrongful conviction? To answer this question, we must review the cases interpreting this statute.

*Caselaw directs courts to sequentially examine several factors when deciding postconviction DNA testing cases.*

Several cases have interpreted this statute. As the cases have been decided, certain points of law have emerged. Our Supreme Court has said the statute has created a sequence of questions that a court may have to answer when dealing with petitions for postconviction DNA testing. First, should the court order testing? If so, how are any test results to be weighed? These questions are distinct, and their methods of resolution should not be conflated.

First, some general observations from the cases provide a context for an understanding of this law. The right to DNA testing is not limited to cases in which there is a substantial question of innocence. *State v. Hernandez*, 303 Kan. 609, 620-21, 366 P.3d 200 (2016). A petitioner need not show with certainty that the requested testing will produce noncumulative exculpatory evidence. *Hernandez*, 303 Kan. at 617. "Likewise, the statute does not require the prisoner to make specific allegations regarding how the DNA testing would produce noncumulative, exculpatory evidence." *Bruner v. State*, 277 Kan. 603, Syl. ¶ 4, 88 P.3d 214 (2004). Rather, "the district court is charged with the responsibility of assessing the exculpatory and cumulative nature of each item proposed to be tested." *State v. Lackey*, 295 Kan. 816, 824, 286 P.3d 859 (2012).

To make this assessment, a court must understand the qualities of exculpatory evidence. Evidence is exculpatory when it "'tends to disprove a fact in issue which is material to guilt or punishment.'" Evidence need not be exonerating to be exculpatory. The court may not weigh evidence to determine whether DNA testing may produce exculpatory evidence. *Johnson*, 299 Kan. at 894. That the DNA evidence may be of little evidentiary value does not matter when the court is initially determining whether to order testing. The resolution of Levy's appeal turns on the definition of exculpatory evidence.

The next step in the procedure requires further decision making by the court. Once DNA results are obtained, the district court can then make a probabilistic determination about what jurors would do given the new evidence. *State v. George*, 308 Kan. 62, 68, 418 P.3d 1268 (2018). The mere absence of DNA on an item can be exculpatory. *Hernandez*, 303 Kan. at 617. The *Bruner* court commented that "[w]hile some aspects of K.S.A. 2003 Supp. 21-2512 might allow a 'fishing expedition,' we must conclude such an expedition is one the legislature has concluded is worth conducting." 277 Kan. at 606.

To summarize the process then, the court first determines whether to test, and then, weighs what evidence comes from the testing.

*Two cases show the broad nature of this statute.*

The *Bruner* and *Lackey* cases reveal the Supreme Court's approach to the application of this statute. Bruner was convicted of the murder of his wife based on circumstantial evidence. Bruner sought postconviction DNA testing of blood samples, skin samples from the victim's hands, and hair samples the police had collected, but Bruner did not make specific assertions about what noncumulative, exculpatory evidence would be produced from such testing. The district court summarily denied Bruner's motion without appointing counsel or conducting an evidentiary hearing. The Supreme Court remanded the case for appointment of counsel and an evidentiary hearing on the

request for DNA testing because Bruner had alleged all that the statute required. 277 Kan. at 606, 608. In other words, Bruner had said enough to obtain an order for testing.

We turn to the second case, *Lackey*. Lackey was convicted of murder and rape of a college student. The victim was last seen by her boyfriend. The KBI matched sperm found inside the victim's vagina and biological material found on the victim's underwear to Lackey's DNA. But short hairs that were found on the victim's body were not tested by the KBI. The district court summarily denied Lackey's pro se petition for postconviction DNA testing of the short hairs and for retesting of all the collected samples against the victim's boyfriend's DNA. A panel of this court affirmed, rejecting Lackey's request to test the short hairs because:

> "DNA testing on the short hairs would not produce exculpatory evidence in this case when Lackey's DNA was consistent with the DNA found in [the victim's] vagina and underneath her fingernails[,] . . . especially so since Lackey had denied knowing [the victim] and denied being in Kansas when the crimes against [the victim] were committed." *State v. Lackey*, 42 Kan. App. 2d 89, 97, 208 P.3d 793 (2010).

But our Supreme Court reversed that decision. The court held "exculpatory evidence" is *not* limited to evidence that definitively exonerates the defendant when weighed against other evidence in the case and in light of the defendant's theory of the case. 295 Kan. at 823. The court remanded the case for an evidentiary hearing to determine whether DNA testing of the short hairs was required under K.S.A. 21-2512. *Lackey*, 295 Kan. at 824.

Both *Bruner* and *Lackey* reveal that a petitioner, at least at first, does not have to show *many* reasons why testing should be ordered. But the petitioner has to show that testing may reveal evidence, or even the absence of evidence, that suggests innocence.

8

*Exculpatory does not mean exonerating.*

In two cases, *George* and *Hernandez*, our Supreme Court emphasized that the purported DNA evidence need only be marginally exculpatory. George was convicted of rape of a convenience store clerk in the storeroom. Pieces of hair from the floor of the storeroom were collected as evidence but never tested by the KBI. George's DNA was not found on fluid samples collected during the sexual assault examination. Rather, the fluid samples matched the clerk's boyfriend's DNA. George's first trial ended in a mistrial. At the retrial, there was no testimony on the DNA evidence. The State's case depended on surveillance video and the clerk's testimony. George filed a pro se petition for postconviction DNA testing of the hairs. The district court appointed George counsel and held a hearing. George sought testing of the hairs, claiming the clerk misidentified him as the perpetrator. The district court denied the motion and a panel of this court affirmed. *George*, 308 Kan. at 63-65. The panel ruled that DNA testing of the hairs would be "marginally exculpatory" because George denied interacting with the clerk. But the panel found the evidence would be cumulative. 308 Kan. at 67-68.

The Supreme Court agreed that if DNA testing showed the hairs were not a match to George, the result of the testing would be exculpatory because it would tend to show he had not been at the spot where the rape occurred. 308 Kan. at 68. The court held that "[*b*]*ecause Kansas law does not allow for the weighing of evidence until after DNA test results are obtained, exculpatory by the smallest margin is sufficient*." (Emphasis added.) 308 Kan. at 71. The court remanded on the issue of whether the evidence would be cumulative. 308 Kan. at 75. We take this to mean that even the slightest indication of exculpation would *call* for testing.

Another case showing the minimalist view of our Supreme Court is *Hernandez.* Hernandez was convicted of the rape of his 13-year-old daughter. Police did not submit bedding collected from the home for forensic testing because the last incident of sexual

assault was two weeks before the search and Hernandez wore a condom. The State's case rested mainly on the credibility of the witnesses. The defense argued that the child fabricated the sexual abuse allegations. Hernandez filed a pro se petition for postconviction DNA testing of the bedding. The district court denied the petition after appointing counsel to represent Hernandez and conducting a nonevidentiary hearing. A panel of this court affirmed. *Hernandez*, 303 Kan. at 613. The panel explained:

> "'Hernandez asked that the sheets be tested for his DNA, his wife's DNA, and C.H.'s DNA. The discovery of Hernandez' DNA on the sheets would have been detrimental to his defense. But the absence of Hernandez' DNA on the sheets would not tend to prove or disprove any fact at issue that was material to his guilt or innocence. Likewise, the presence or absence of C.H.'s DNA or the wife's DNA on the sheets would not have disproved C.H.'s allegations against Hernandez.'" 303 Kan. at 620.

But our Supreme Court reversed. The court held the State's argument—that the absence of Hernandez' DNA on the bedding would not have changed the verdict—invited the district court to apply an incorrect legal standard to requests made under K.S.A. 2020 Supp. 21-2512. The district court cannot weigh evidence until after testing has been conducted and the results are known. *Hernandez*, 303 Kan. at 617-18. Because Hernandez denied engaging in any sex acts with his daughter, DNA evidence could be exculpatory, and the absence of DNA evidence could be exculpatory. 303 Kan. at 619-20. The court explained its reasoning by offering examples:

> "For instance, the presence of DNA from Hernandez and/or his wife on their bed, coupled with the absence of C.H.'s DNA, would tend to disprove that Hernandez sexually abused C.H. on that bed. Similarly, the presence of DNA from C.H. and/or her boyfriend on her bed, without any DNA from Hernandez, would be exculpatory evidence." 303 Kan. at 620.

The court remanded for the district court to conduct a hearing using the correct legal standards. 303 Kan. at 621.

Again, these two cases show that when a court is considering whether to order testing, the petitioner does not have a high burden of persuasion for a court to order testing. Even the absence of DNA may signal innocence and is therefore exculpatory.

We note that the facts in *Hernandez* are similar to the case here. Identity was in dispute here, in the sense that Levy denied committing the acts. In *Hernandez*, the defendant argued the child victim fabricated the allegations.

Recognizing this similarity does not end our analysis. A court cannot weigh the evidence when deciding whether DNA testing is warranted. But there must be some possibility that the DNA evidence could tend to prove or disprove a *disputed material fact*. See *Hernandez*, 303 Kan. at 620. In *Hernandez*, the victim said the assaults took place in her bedroom and on Hernandez' bed. The absence of the victim's DNA on Hernandez' sheets and the absence of Hernandez' DNA on the victim's sheets could have tended to disprove that sex acts occurred in his or her bed. 303 Kan. at 611. This is where the facts here become dissimilar to the facts in *Hernandez*.

Here, the absence of Levy's DNA on the girl's clothing could tend to show that he did not rape her the day before while she was wearing that clothing. But is that a fact that was in dispute? We do not think so.

We do not see how the absence of Levy's DNA on the girl's clothing could prove or disprove a disputed material fact in this case. The girl said Levy had assaulted her the night before. And she said it happened whenever her mom was at work. But the girl did not specifically allege that Levy raped her while she was wearing the shirt and pants in question. They were her day clothes. At trial, she could not remember what she was wearing during the assaults. Her recorded interview is not in our record. The detective testified the State could not tie that shirt and pants to any specific allegation of abuse. Levy did not testify that the girl was wearing that clothing at the times in question. His

11

recorded interview is not in our record. The absence of Levy's DNA on the shirt and pants does not show anything. There was no evidence she was wearing those clothes during one of the assaults. There was no disputed material fact about that clothing. The absence of DNA on that clothing would not be exculpatory even by the smallest margin.

*Is Levy asking for the testing of biological material?*

We understand that the statute speaks in terms of testing biological material. We believe this is because DNA evidence can only be obtained from biological material. The State emphasizes that Levy has not shown there is any biological material on the girl's shirt and jeans. We turn to that question by first examining the caselaw that deals with this subject. We must point out an observation by our Supreme Court. The *Hernandez* court commented:

> "There is an apparent split of authority in our Court of Appeals on whether . . . a petitioner bears the burden to prove the existence of biological material on the items to be tested, *i.e.*, whether an inmate is entitled to a test to establish the absence of any biological material." 303 Kan. at 614-15.

But the court did not resolve the question because

> "Hernandez' petition recited that the items to be tested were 'believed to contain biological material.' The State's response did not refute the existence of biological material, but rather it noted that the CSI's report indicated possible DNA evidence on C.H.'s sheet and Hernandez' comforter. Moreover, at the jury trial, the CSI did not dispute defense counsel's assertion that there was a potential for DNA on the collected items." 303 Kan. at 615.

The court further held: "An inmate in state custody after a conviction for rape, who states a belief that biological material exists that can be tested for DNA, which allegation is not

contested by the State, is qualified to petition for such DNA testing" so long as the other statutory requirements are met. 303 Kan. 609, Syl. ¶ 2.

The split in the decisions is shown in several cases. For example, in *State v. Smith*, 34 Kan. App. 2d 368, 372, 119 P.3d 679 (2005), the panel had concluded that a petitioner did not need to make specific allegations about the nature of or existence of biological material to be tested because a criminal defendant may not know about the extent, if any, that biological evidence had been collected. See *Goldsmith v. State*, 34 Kan. App. 2d 789, 793-94, 124 P.3d 516 (2005).

But at least two panels of this court had concluded that K.S.A. 21-2512 applied only to testing of known biological material. *State v. Rivera*, No. 111,857, 2015 WL 5009324, at *3 (Kan. App. 2015) (unpublished opinion); *State v. Lingenfelter*, No. 105,551, 2012 WL 687836, at *4 (Kan. App. 2012) (unpublished opinion).

Lingenfelter was convicted of raping his 16-year-old niece. He sought postconviction DNA testing of clothing she had been wearing when she was raped. He argued that if another man's semen was found on her clothing, it could have come from the actual rapist. The *Lingenfelter* panel held:

> "The statute neither contemplates nor describes petitions that seek to have physical evidence examined for the possible existence of biological material that, if discovered, could then be subject to testing. In other words, a petition requesting that a forensic examiner look at an object to see *if* it contains blood, other bodily fluids, or some other biological material falls outside the scope of K.S.A. 21-2512." 2012 WL 687836, at *3.

The *Lingenfelter* panel cautioned that a contrary reading would "remarkably expand the statute." 2012 WL 687836, at *4.

13

Rivera was also convicted of rape. Rivera sought postconviction DNA testing of the victim's bedding, claiming he was innocent and that either no DNA material would be found or none could be attributed to him. The *Rivera* panel held:

> "Rivera's arguments necessarily fail because he has not identified any known biological material on the bedding that could be tested. He sought DNA testing of the bedding by asserting there will be an absence of biological material on those sheets to test, thus his request for testing does not fall within the scope of K.S.A. 2014 Supp. 21-2512." 2015 WL 5009324, at *3.

We do not follow the logic of *Rivera* and *Lingenfelter*. If a petitioner asserts that someone else committed the crime and states a belief that the other person's DNA will be found on the item to be tested, then testing would be appropriate if the other statutory conditions are met. Under those circumstances, biological material could be present on that item.

But here, Levy did not assert a belief that biological material was present on the girl's shirt and pants in his motion for DNA testing, at the hearing, or in his appellate brief. Because Levy did not state "a belief that biological material exists that can be tested for DNA" and the State does not concede that there is biological material on the clothing, this case falls into the territory that the *Hernandez* court did not decide. See 303 Kan. 609, Syl. ¶ 2.

Must a district court order testing of nonbiological material—such as the clothing in this case—to establish the absence of the petitioner's DNA when that petitioner has not stated a belief that biological material exists on the item which can be tested for DNA and the State does not concede there is biological material on the item?

In our view, the statute simply does not cover the type of testing Levy wants performed. The statute only provides for "forensic DNA testing." DNA testing cannot be

14

performed on nonbiological material. The statute provides no relief to a petitioner when DNA testing is impossible. We agree with the district court's ruling on this point. But, in our view, the fact that testing of these two items cannot lead to exculpatory evidence is controlling in this appeal.

To sum up, we recognize that our Supreme Court in its various rulings on the postconviction DNA testing statute has set a low threshold for a petitioner to cross in order to obtain an order for testing. Even so, to order testing, there must be an understanding by the court that noncumulative *exculpatory* evidence may be discovered from the testing. A possibility of such a discovery seems sufficient according to the cases. But that evidence must tend to prove or disprove a material fact. In other words, it must have some exculpatory quality. Does it tend to show the petitioner's innocence?

Because we believe that testing of the victim's shirt and jeans she may have worn the day before her encounter with Levy would not yield any exculpatory evidence, we must reject Levy's petition and affirm the district court. The absence of his DNA would simply tend to prove his DNA is not on the items.

Affirmed.