No. 100,890

STATE OF KANSAS, *Appellee*, v. ROBERT HENRY LACKEY II,
*Appellant*.

(286 P.3d 859)

Opin-
ion filed October 19, 2012.

*Gerald E. Wells*, of Lawrence, argued the cause and was on the brief for appellant.

*Ellen H. Mitchell*, county attorney, argued the cause, and *Nicole Romine*, assistant county attorney, and *Steve Six*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Robert Henry Lackey II appeals from the trial court's summary denial of his petition for DNA testing pursuant to K.S.A. 21-2512. Because we hold that Lackey's petition satisfied the criteria of K.S.A. 21-2512(a) and (c), we reverse and remand for an evidentiary hearing with appointed counsel.

## FACTUAL AND PROCEDURAL OVERVIEW

A more complete factual recitation can be found in *State v. Lackey*, 280 Kan. 190, 120 P.3d 332 (2005), *cert. denied* 547 U.S. 1056, *overruled in part by State v. Davis*, 283 Kan. 569, 158 P.3d 137 (2006). Here, we will provide a brief overview.

In 2002, a jury convicted Lackey of premeditated first-degree murder and rape for acts committed two decades earlier, in December 1982. The victim was a 22-year-old college student who volunteered at the Gospel Mission in Salina where Lackey—then known as Bob Moore—was a transient resident who also worked as a cook.

Lackey was last seen at the mission around 10 or 11 p.m. on December 11, 1982. The following day, Lackey and his personal belongings were gone, except for a pair of men's underwear left under the bed Lackey had been using.

In the same time frame, the victim was last seen by her boyfriend, Jay Czarnowski, on December 9 and last spoken to by her mother and sister on December 10. On December 18, Czarnowski found the victim dead in a closet in the back bedroom of her mobile home. Evidence collected during the investigation of the victim's death included the underwear found under Lackey's bed; swabs from the victim's anal, oral, and vaginal cavities; and scrapings from underneath the victim's fingernails. Lackey also alleges that short hairs were found on the victim's body.

The case remained unsolved until the Kansas Bureau of Investigation (KBI) received information from Canadian authorities in 1996 that a man named Bob Moore had been involved in a homicide in Salina in 1982. The KBI discovered that Bob Moore was an alias for Lackey, and in January 2002 the KBI located Lackey in Alabama. Ultimately, Lackey was extradited to Kansas in March 2002 and put on trial later that year.

At trial, the State proffered the testimony of Lisa Marie Burdett, a forensic scientist with the KBI. Burdett testified that she conducted DNA testing on vaginal, anal, and oral swabs taken from the victim; scrapings from underneath the victim's fingernails; and biological material on the underwear found under Lackey's bed in the Salina mission. Burdett then compared the DNA from these items to known DNA samples of the victim, Lackey, and Czarnowski.

Burdett's testimony established that sperm cells found in the victim's vagina were consistent with Lackey's DNA. The probability of selecting an unrelated Caucasian individual at random with that

specific profile is 1 in 194 billion. Additionally, Burdett's testimony established that Lackey could not be excluded as a partial contributor to the DNA profile from the victim's fingernail scrapings, while Czarnowski could be eliminated as a contributor to that sample.

Burdett also testified that she did not compare Czarnowski's DNA to the cutting from the underwear because it was a match with Lackey's DNA. Burdett indicated that under usual circumstances, once there is a match she does not further compare DNA against anyone else, but on occasion she will make further comparisons when there are requests by agents of law enforcement. Burdett did compare Czarnowski's blood to the DNA found on the vaginal swabs from the victim. The results eliminated or excluded Czarnowski as a possible contributor.

Lackey was convicted and sentenced to life in prison on both counts. On appeal to this court, his convictions were upheld, but his sentences under the Habitual Criminal Act were vacated. *Lackey*, 280 Kan. at 235. Lackey's resentencing on remand is not in issue here.

On May 16, 2007, Lackey filed a pro se petition for DNA testing pursuant to K.S.A. 21-2512. In the petition, Lackey asserted that the prior DNA test results were incompetent for a number of reasons, including the cross-contamination of male and female samples. He complains that some of the results were not compared against the DNA of the victim's boyfriend, Czarnowski. The motion asked that a DNA expert of Lackey's choosing be allowed to examine the DNA test procedures utilized, as well as the evidence samples and test results, in order to allow Lackey to make an informed and intelligent request for further testing. Lackey specifically requested the following testing:

"1)   Re-test DNA of fingernail scrapings;
"2)   Test underwear for semen of defendant AND vaginal fluid of alleged victim;
"3)   Test all evidentiary DNA samples against Czarnowski; and
"4)   Test the short hairs found on the alleged victim's body."

On May 30, 2007, the district court summarily denied Lackey's petition, determining that the DNA evidence was properly offered

and admitted by the court; that the DNA techniques used by the State were representative of the latest techniques available; that Lackey failed to show that more accurate techniques were available; and that Lackey's petition failed to state a cause of action upon which relief could be granted pursuant to K.S.A. 21-2512. After the district court denied Lackey's motion for reconsideration, he appealed to the Court of Appeals.

The Court of Appeals held that the defendant was "unable to establish that the DNA samples collected in this case were capable of producing noncumulative, exculpatory evidence relevant to his claim that he was wrongly convicted of the premeditated murder and rape [of the victim.]" *State v. Lackey*, 42 Kan. App. 2d 89, 101, 208 P.3d 793 (2009). The panel relied on the fact that Lackey's DNA was consistent with the DNA found in the victim's vagina and underneath the victim's fingernails to opine "that testing of the biological evidence could not produce noncumulative, exculpatory evidence." 42 Kan. App. 2d at 102. We granted Lackey's petition for review.

## STATUTORY REQUIREMENT FOR DNA TESTING

Lackey argues on appeal that the district court ignored the plain meaning of K.S.A. 21-2512 in ruling on his petition for DNA testing. Specifically, Lackey complains that the district court failed to notify the prosecuting attorney of the petition, as required by K.S.A. 21-2512(b)(1), and that both the trial and appellate courts ignored the clear meaning of K.S.A. 21-2512(a)(3) with respect to the summary denial of his petition for DNA testing of the short hair and bloodstain evidence. In response, the State argues that Lackey's petition was inadequate under K.S.A. 21-2512 and that Lackey failed to adequately brief his argument for DNA testing of the short brown hairs found on the victim's body.

### Standard of Review

The summary denial of a request for DNA testing under K.S.A. 21-2512 presents a question of law over which this court has unlimited review. *Wimbley v. State*, 292 Kan. 796, 810, 257 P.3d 328 (2011). Additionally, the interpretation of a statute is a question of

law over which appellate courts have unlimited review. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010).

*Analysis*

As noted above, Lackey's petition specifically requested the following testing: (1) retesting of fingernail scrapings; (2) testing of underwear for Lackey's semen and the victim's vaginal fluid; (3) testing of all evidentiary DNA samples against Czarnowski's DNA; and (4) testing of the short hairs found on the victim's body. We begin by considering the initial, pretesting statutory procedure to be followed upon the filing of a DNA testing request under K.S.A. 21-2512. The relevant provisions of K.S.A. 21-2512 are as follows:

> "(a) Notwithstanding any other provision of law, a person in state custody, at any time after conviction for murder as defined by K.S.A. 21-3401, and amendments thereto, or for rape as defined by K.S.A. 21-3502, and amendments thereto, may petition the court that entered the judgment for forensic DNA testing (deoxyribonucleic acid testing) of any biological material that:
> (1) Is related to the investigation or prosecution that resulted in the conviction;
> (2) is in the actual or constructive possession of the state; and
> (3) was not previously subjected to DNA testing, or can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results.
> "(b)(1) The court shall notify the prosecuting attorney of a petition made under subsection (a) and shall afford the prosecuting attorney an opportunity to respond.
> (2) Upon receiving notice of a petition made under subsection (a), the prosecuting attorney shall take such steps as are necessary to ensure that any remaining biological material that was secured in connection with the case is preserved pending the completion of proceedings under this section.
> "(c) The court shall order DNA testing pursuant to a petition made under subsection (a) upon a determination that testing may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced."

Following the plain language of the statute, we discern that a district court receiving a request from a qualified inmate for DNA testing pursuant to K.S.A. 21-2512 should initially follow a three-step process: (1) notify the prosecuting attorney that a petition has been made under K.S.A. 21-2512(a); (2) determine whether the biological material sought to be tested qualifies for testing under K.S.A. 21-2512(a)(1)-(3); and (3) determine whether testing may

produce noncumulative, exculpatory evidence relevant to the petitioner's claim of wrongful conviction or sentencing. In performing the second and third steps, the district court must assess whether to appoint counsel for an indigent applicant, as provided by K.S.A. 21-2512(e), and whether an evidentiary hearing is required.

Lackey complains that the district court summarily denied his testing request without notifying the prosecuting attorney. We agree that the district court erred in this regard. The purpose of the notification requirement is at least two-fold: First, it gives the State an opportunity to respond to the request; and, second, it provides a warning to the State that the biological material in question must be preserved. The latter purpose benefits the petitioner by preserving potentially exculpatory evidence. But the first purpose actually benefits the State by giving the prosecutor an opportunity to obtain an early disposition of the DNA testing request by showing the court that the biological material does not qualify for testing under the three factors of K.S.A. 21-2512(a). But given that neither party has shown any prejudicial effect from the court's failure to properly notify the prosecuting attorney in this case, we discern no relief that may be given for the notification error.

With respect to the second step, we have previously discussed the three requirements for testing biological material pursuant to K.S.A. 21-2512(a). See *Wimbley*, 292 Kan. at 810-11. The first criterion—that the material be related to the investigation or prosecution that resulted in the conviction—is to be read broadly to include any material related to either the investigation or the prosecution; it is not limited to the evidence that was actually introduced at trial. *Wimbley*, 292 Kan. at 810. The biological material at issue here is clearly related to the investigation or prosecution of the murder and rape in this case.

The second criterion, in K.S.A. 21-2512(a)(2), only requires that the prisoner allege that the State has possession of the evidence to be tested, and we liberally construe pro se pleadings. *Bruner v. State*, 277 Kan. 603, 605, 88 P.3d 214 (2004). Here, Lackey alleged that all the material was in the State's possession.

The third criterion, set forth in K.S.A. 21-2512(a)(3), provides two distinct alternatives: (1) The biological material has not been

previously tested or (2) the material could be retested with new and improved techniques. With respect to most of the biological material identified in his motion, Lackey appears to stumble over the hurdle of K.S.A. 21-2512(a)(3).

In requesting retesting of the fingernail scrapings, Lackey quibbles over the technician's findings in the original testing but does not allege that there are new DNA testing techniques which would yield more accurate results. Any complaint about the procedures followed by the State's DNA technician or the ambivalence of the results she obtained in the original testing was a proper subject for cross-examination and impeachment at trial. K.S.A. 21-2512 is designed to obtain new testing, not to redo the old tests for impeachment purposes.

Lackey's request that the underwear be tested for the presence of his semen or of the victim's vaginal fluid likewise misses the point. The underwear was originally tested and matched to Lackey's DNA to establish that the Bob Moore who was sleeping in the bed where the underwear was found was the same person as the defendant. Lackey was certainly free to argue to the jury that the State had failed to show that the underwear contained his semen or the victim's vaginal fluid. Apparently, he seeks the retest, in part, to corroborate the nonexistence of evidence that was not produced at trial. That is not the purpose of K.S.A. 21-2512. Moreover, Lackey once again failed to argue that newer techniques were available to improve on the original testing.

In making his request to have all evidentiary DNA samples tested against Czarnowski's DNA, Lackey further reveals his misunderstanding of the purpose of K.S.A. 21-2512. A profile of Czarnowski's DNA existed at the first trial, as evidenced by the testimony excluding him as a contributor to the fingernail scrapings and vaginal swab. What Lackey is really seeking is to have someone compare the existing DNA profile of Czarnowski with the existing DNA profiles on all of the evidence. K.S.A. 21-2512 contemplates the necessity for new or different DNA testing, not the further analysis of previous test results.

But Lackey's request for testing of the short hairs on the victim's body fits the first alternative of K.S.A. 21-2512(a)(3) because, as

was apparently conceded in the Court of Appeals opinion, "DNA testing had never been performed on [the] short hairs found on [the victim's] body." *Lackey*, 42 Kan. App. 2d at 97. Accordingly, the record before us indicates that the short hairs evidence facially passed muster under all three criteria of K.S.A. 21-2512(a), *i.e.*, the hairs were biological material that qualified for testing.

That moves us to the third step of the process—determining whether the "testing may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced." K.S.A. 21-2512(c). The Court of Appeals found that

"DNA testing on the short hairs would not produce exculpatory evidence in this case when Lackey's DNA was consistent with the DNA found in [the victim's] vagina and underneath her fingernails[,] . . . especially . . . since Lackey had denied knowing [the victim] and denied being in Kansas when the crimes against [the victim] were committed." *Lackey*, 42 Kan. App. 2d at 97.

Apparently, the Court of Appeals was defining "exculpatory evidence" as evidence that definitively exonerates the defendant when weighed against the other evidence in the case and when viewed in light of the defendant's theory of defense. We disagree with that premise.

As the panel noted and brushed aside, we previously, and rather explicitly, rejected the notion of defining exculpatory evidence under K.S.A. 21-2512(c) as being a function of weighing evidence. See *Bruner*, 277 Kan. at 606 (plain statutory language does not limit DNA testing to cases where evidence not overwhelming). In the context of a prosecutor's obligation to disclose exculpatory evidence, we have said that " '[e]vidence is exculpatory if it tends to disprove a fact in issue which is material to guilt or punishment.' " *State v. Aikins*, 261 Kan. 346, 382, 932 P.2d 408 (1997) (quoting *State v. Carmichael*, 240 Kan. 149, 153, 727 P.2d 918 [1986]). Additionally, Black's Law Dictionary 637 (9th ed. 2009) defines exculpatory evidence as "[e]vidence *tending* to establish a criminal defendant's innocence." (Emphasis added.) Finally, and most compelling, *Haddock v. State*, 295 Kan. 738, 759, 286 P.3d 837 (2012), specifically acknowledged that evidence may be exculpatory without being exonerating. In other words, the argument that other

inculpatory evidence and the theory of defense rendered the hair evidence not exculpatory was actually a non sequitur or fallacy of affirming the consequent, *i.e.*, the panel committed a fallacy of relevance.

The district court is charged with the responsibility of assessing the exculpatory and cumulative nature of each item proposed to be tested. In *Bruner*, we clarified that the statute does not require the prisoner to make specific allegations regarding how the requested testing would produce noncumulative, exculpatory evidence. 277 Kan. at 606. Instead, we opined that it was the legislature, through the language employed in K.S.A. 21-2512, that had concluded a "fishing expedition" for DNA evidence is worth conducting in these cases. 277 Kan. at 606. Accordingly, in *Bruner* we concluded the district court should have appointed counsel and conducted an evidentiary hearing to make that determination. 277 Kan. at 608. We come to the same conclusion here, reversing and remanding this case for an evidentiary hearing at which Lackey has the assistance of counsel.

Before concluding, we pause to emphasize that our decision today only addresses the procedure to be followed up to and including the order for DNA testing. After the test results are obtained, the procedure to be followed is governed by K.S.A. 21-2512(f). Under that subsection, the district court may well be called upon to weigh the evidence to make a "probabilistic determination about what reasonable, properly instructed jurors would do" with the new evidence in light of the totality of the circumstances. *Haddock*, 295 Kan. at 769. But the statute does not contemplate that exercise of discretion in determining whether to order the testing in the first instance. Accordingly, we reverse and remand for the appointment of counsel and the conducting of a hearing to determine whether DNA testing of the hair evidence is required under K.S.A. 21-2512.

Reversed and remanded with directions.

MORITZ, J., not participating.
CLARK V. OWENS II, District Judge, assigned.