NOT DESIGNATED FOR PUBLICATION

No. 126,049

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ZABRIEL L. EVANS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Submitted without oral argument. Opinion filed January 10, 2025. Affirmed.

*Zabriel L. Evans*, appellant pro se.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., ATCHESON and CLINE, JJ.

PER CURIAM: Nearly 15 years after a jury sitting in Sedgwick County District Court convicted Zabriel L. Evans of a home invasion and sexual abuse of the woman living there, he filed a request for DNA testing of some of the evidence police collected during their investigation. The district court ordered the testing and later determined the test results were not of such materiality that Evans should be granted a new trial under K.S.A. 21-2512(f)(2), a statute regulating postconviction DNA testing. Evans has appealed. We review the district court's determination for abuse of judicial discretion. Finding none, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

In July 2004, a man broke into the Wichita home of a woman and her four children. He raped and sodomized the woman and in the course of the assault put his mouth on her breast and her vagina. Before leaving, he took a small amount of money from the woman's purse. The man wore gloves throughout the criminal episode and used a condom during the rape. The woman underwent a forensic sexual assault examination at an area hospital. The nurse used swabs to collect biological material from various parts of the woman's body, took fingernail scrapings, and retained the woman's clothing. Those items were turned over to law enforcement investigators.

Later that month, another woman confronted a man trying to climb through the window of her apartment. When she told the man her husband was in the shower, he fled. Police officers arrested Evans shortly afterward near the apartment.

After Evans' arrest, the victim of the sexual assault positively identified him in a photographic array as her attacker. During the investigation, Evans told a police detective he did not know the woman and had never been in her home.

Pertinent here, the State charged Evans with aggravated criminal sodomy, rape, and aggravated burglary—all felonies—and misdemeanor theft in the first home invasion. The State also charged him with aggravated burglary for the later break-in. In 2005, a jury considered the charges arising out of both incidents. During the trial, a DNA analyst testified that the swab from the sexual assault victim's breast contained saliva and DNA from the saliva was consistent with a known sample of Evans' DNA. The analyst did not test the other materials. Evans declined to testify in his own defense. The jury found Evans guilty of each charge. The district court later sentenced Evans to a controlling prison term of 620 months.

Evans filed a direct appeal, and this court affirmed the convictions and sentences. *State v. Evans*, No. 95,276, 2007 WL 1042136, at *5 (Kan. App. 2007) (unpublished opinion). Evans has filed two motions for habeas corpus relief under K.S.A. 60-1507—one timely, the other not. The district court denied each of them, and we affirmed those rulings. *Evans v. State*, No. 123,525, 2022 WL 881120, at *3 (Kan. App. 2022) (unpublished opinion); *Evans v. State*, No. 103,306, 2011 WL 1004609, at *5 (Kan. App. 2011) (unpublished opinion).

In 2019, Evans filed his petition for DNA testing, as permitted by K.S.A. 21-2512. Evans initially represented himself but later agreed to have an appointed lawyer represent him. The district court ordered that the swabs and other evidence potentially containing biological material that had not been tested ahead of Evans' trial be tested. The testing was done, and the DNA analyst doing the testing prepared a report.

The district court convened a hearing in October 2022. At the hearing, the lawyers and the district court discussed the analyst's report. But the report itself was not admitted as an exhibit, and it is included in neither the district court record nor the appellate record. So we have not reviewed the report. From the discussion during the hearing, we infer the DNA report stated that Evans' DNA was not found on the newly tested items, including a vaginal swab of the victim. But the record is ambiguous. We cannot tell whether there was insufficient or no DNA, so there was nothing to compare to Evans' genetic profile or whether there was DNA, but it was inconsistent with Evans' profile. As we discuss, that ambiguity creates a substantial roadblock for Evans.

At the hearing, Evans testified to a version of the underlying circumstances of the first break-in in which he sold illegal drugs to the victim in exchange for sex. He kissed the victim's breast but was interrupted by one of the woman's young children. The woman then gave him the money in her purse as partial payment for the drugs, and he left. No

3

other witnesses testified at the hearing. The district court made no express credibility finding about Evans' testimony in ruling on the DNA petition.

The district court found the new DNA testing to be favorable to Evans but not so material as to create "a reasonable probability" that it would have "result[ed] in a different outcome at a trial"—the standard for granting relief on a petition under K.S.A. 21-2512(f)(2). The district court, therefore, denied Evans' request for a new trial. Evans appealed that ruling and has represented himself in this court.

LEGAL ANALYSIS

A defendant convicted of first-degree murder or rape may file a petition for DNA testing of "biological material," as outlined in K.S.A. 21-2512, if the State has custody of the material, the material has not been tested or improving testing methods have been developed since it was tested, and the material "[i]s related to the . . . prosecution that resulted in the conviction." K.S.A. 21-2512(a)(1). The district court must permit the testing if it "may produce noncumulative, exculpatory evidence" bearing on a defendant's claim they had been wrongfully convicted. K.S.A. 21-2512(c). The Kansas Supreme Court has extended the statutory protection to defendants convicted of aggravated criminal sodomy to avert an equal protection violation. *State v. Denney*, 278 Kan. 643, 659-60, 101 P.3d 1257 (2004). For purposes of this appeal, there is no dispute Evans met those conditions, and the district court, therefore, properly ordered the DNA testing.

As we have said, a defendant is entitled to appropriate relief, commonly a new trial, if the test results generate a reasonable probability that the trial would have come out differently had that DNA evidence been available. K.S.A. 21-2512(f)(2). The determination necessarily takes into account the strength of the case the State presented at the trial. *State v. Lackey*, 295 Kan. 816, 824, 286 P.3d 859 (2012); see *State v. LaPointe*,

309 Kan. 299, 309, 434 P.3d 850 (2019) (court reviews trial evidence in considering impact of favorable DNA testing).

Whether the new DNA evidence is favorable to the defendant and has "probative value" bearing on a challenged conviction are questions of law we review without deference to the district court. *Haddock v. State*, 295 Kan. 738, 764-65, 286 P.3d 837 (2012). But we defer to the district court's decision on whether the DNA evidence warrants a new trial or other relief and consider that determination under an abuse of discretion standard. *LaPointe*, 309 Kan. 299, Syl. ¶ 2; *Haddock*, 295 Kan. at 763. A district court exceeds that broad authority if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *State v. Shields*, 315 Kan 131, 142, 504 P.3d 1061 (2022); *State v. Darrah*, 309 Kan. 1222, 1227, 442 P.3d 1049 (2019). Here, Evans challenges the district court's denial of relief and, therefore, must prove an abuse of discretion. See *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018) (burden of proof on party alleging abuse of discretion).

As the appealing party, Evans must likewise furnish a record that establishes reversible error. See *State v. Vonachen*, 312 Kan. 451, Syl. ¶ 2, 476 P.3d 774 (2020) ("An appellant has the burden to designate a record sufficient to establish a claimed error. Without an adequate record, the appellant's claim of error fails."). And we do not construe omissions or gaps in the record in favor of an appellant. See *Harman v. State*, No. 108,478, 2013 WL 3792407, at *1 (Kan. App. 2013) (unpublished opinion) ("When there are blanks in that record, appellate courts do not fill them in by making assumptions favoring the party claiming error in the district court.").

Without the analyst's report, the record establishes only that the additional DNA testing failed to find any more biological material consistent with Evans' genetic profile. Although that may be favorable to Evans, it is only marginally so. We really cannot draw

5

any other conclusions from the record without making unsupported inferences in Evans' favor about the specific findings in the report. And that would be contrary to the proper standard of review. Viewed correctly, the record does nothing to knock down the strong evidence against Evans presented at trial—most notably, the DNA evidence taken from the victim that was consistent with his genetic profile and the victim's eyewitness identification of him. In turn, the record does not suggest some reasonable probability the DNA results—as we must construe them—would have prompted the jury to reach a different conclusion.

Even giving the report an unwarranted interpretation for Evans indicating that another person's DNA was present in the forensic evidence, we are not prepared to say the district court abused its discretion in declining to grant Evans a new trial. Again, that circumstance would not undercut the trial evidence pointing to Evans' guilt. It would be consistent with the victim having had some sort of intimate contact with another person before Evans sexually assaulted her. But such an encounter would in no way exculpate Evans.

We find Evans' testimony at the DNA hearing offering an alternative (and comparatively benign) account of his interaction with the victim in July 2004 to be legally irrelevant for purposes of examining a petition for DNA testing under K.S.A. 21-2512. That may be why the district court didn't address the testimony in ruling on the petition. The statute requires the district court to assess whether the new DNA evidence would have had an appreciable impact if available and offered at trial. K.S.A. 21-2512(f)(2). The Kansas Supreme Court has confirmed the DNA evidence should be weighed along with the original trial evidence in determining whether to grant relief.

Nothing in the statute or the caselaw suggests a defendant may present additional evidence bearing on guilt or innocence during the hearing on the new DNA test results. In short, the statute provides an exceptionally narrow remedial portal applicable only to

6

convictions for two exceptionally serious crimes and then only when new DNA evidence substantially undermines a guilty verdict. It is not an open invitation to offer an array of evidence that wasn't presented at trial. That said, new DNA evidence that may be insufficiently exculpatory to trigger relief under K.S.A. 21-2512 could be combined with other newly discovered *credible* evidence suggesting a defendant's actual innocence—a showing that opens a gateway for a 60-1507 motion that otherwise would be impermissibly successive or untimely. K.S.A. 2023 Supp. 60-1507(f)(2)(A) (time limit extended for "colorable claim of actual innocence" based on new evidence); *Beauclair v. State*, 308 Kan. 284, 304, 419 P.3d 1180 (2018) (colorable showing of actual innocence permitted successive 60-1507 motion).

Here, the district court accurately assessed the law governing petitions under K.S.A. 21-2512 and did not misunderstand the relevant facts in denying Evans a new trial or other relief. We are confident other district courts would have ruled the same way on this record. We, therefore, conclude the district court acted well within the broad latitude that constitutes sound judicial discretion.

In wrapping up, we mention that Evans' hearing testimony was implausible on its face. First, of course, the testimony directly conflicted with what Evans told the investigating detective in 2004 and what the detective then conveyed to the jury. Why would Evans withhold his exculpatory account then, only to reveal it 15 years later? Moreover, that account appears to have been conspicuously missing from the claims he raised in either his untimely 60-1507 motion or his earlier 60-1507 motion. *Evans*, 2022 WL 881120, at *2; *Evans*, 2011 WL 1004609, at *3-4. Second, his new version was impeccably tailored to account for the available DNA evidence and yet deflect each of the criminal charges. Evans had every incentive to promote such a concoction to escape the 35 or so years remaining on his sentence. See *Sampson v. State*, No. 113,653, 2016 WL 4761914, at *3 (Kan. App. 2016) (unpublished opinion) (criminal defendant's exculpatory testimony "inherently vested with self-interest"); *Johnson v. State*, No.

109,169, 2014 WL 1362929, at *8 (Kan. App. 2014) (unpublished opinion). And the victim would have had no reason to call the police to lodge a false sexual assault claim against an attacker she purportedly didn't know if what happened was no more than a drug deal with someone she presumably knew. Those glaring weaknesses in Evans' hearing testimony only buttress the district court's decision to discard that account in denying relief on Evans' petition.

Finally, in his petition, Evans alleged that the State impermissibly withheld DNA evidence leading up to his trial in 2005. The scope of the claim isn't especially clear since the State conducted only limited DNA testing and apparently provided the results of that testing. Regardless, a petition under K.S.A. 21-2512 for additional DNA testing is not the proper vehicle to raise a *Brady* claim for the State's ostensible failure to disclose exculpatory evidence. See *State v. Hirsh*, 310 Kan. 321, 334, 446 P.3d 472 (2019) (outlining nature of *Brady* violation); see also *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) (recognizing constitutional duty of prosecution to turn over exculpatory evidence to criminal defendant before trial). The point is ancillary and irrelevant.

Affirmed.