IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 127,534

STATE OF KANSAS,
*Appellee*,

v.

STANTON HOLT,
*Appellant.*

SYLLABUS BY THE COURT

K.S.A. 21-2512(c) does not mandate DNA testing based on a mere allegation that testing could produce exculpatory evidence. District courts must assess the possibility that testing could produce exculpatory evidence, and this may entail both factual findings and conclusions of law.

Appeal from Geary District Court; KEITH L. COLLETT, judge. Oral argument held April 29, 2025. Opinion filed August 8, 2025. Affirmed.

*Kristen B. Patty*, of Wichita, argued the cause and was on the brief for appellant.

*Andrew J. Lohmann*, assistant solicitor general, argued the cause, and *Kris W. Kobach*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.:  In 1994, Stanton Holt was convicted of more than 60 offenses, including 2 counts of first-degree murder. These convictions arose out of a string of 1993 burglaries which occurred from March through May. During two of the burglaries in April, two residents were killed. Following his convictions, Holt was sentenced to two

1

consecutive life sentences plus 123 to 355 years in prison. This court affirmed those convictions in *State v. Holt*, 260 Kan. 33, 917 P.2d 1332 (1996). Since 1996, Holt has pursued multiple avenues of relief from his convictions and his sentence. *Holt v. State*, No. 119,619, 2019 WL 6794473, at *1 (Kan. App. 2019) (unpublished opinion) (listing cases). In the present case, Holt appeals the district court's denial of his K.S.A. 21-2512 petition for postconviction DNA testing.

Consideration of Holt's appeal requires a bit of background to understand the evidence Holt requests to have tested. Holt's crime spree ended on May 1, 1993, after Holt broke into an apartment and the resident shot Holt with a small caliber revolver. Holt ran from the apartment, bleeding. Officers determined that after Holt had been shot, he went inside an open garage and changed clothes. On May 2, 1993, winter gloves and a blue tire iron were discovered together located north of where Holt had been shot. The items were wet, because it had been raining. The tire iron was determined to be consistent with the murder weapon used in both April killings.

When processing the scene of one of the murders, a partial shoe print made from dried blood was located. Also on May 2, 1993, officers searched Holt's residence and seized a pair of blood-stained shoes. A swab was taken from the right shoe. Holt was arrested shortly thereafter.

Following Holt's arrest, he asked his girlfriend to return to the garage and retrieve his clothes. The girlfriend located the clothes, which included a pair of black jeans. The girlfriend took the jeans to Holt's mom, and when officers retrieved them, they appeared as though they had been washed; however, they still had blood stains. Police took the jeans and made cuttings from the blood-stained jeans.

Although Holt denied that the gloves and tire iron were his, accomplice testimony as well as officer testimony both established that Holt had possessed gloves and a tire

2

iron matching those found. Both the gloves and tire iron tested positive for human blood. Holt acknowledged that the jeans were his; but, he maintained that the blood on the jeans was solely his own and the amount of blood appeared exaggerated from the rain.

In October 2020, Holt filed a pro se motion requesting DNA testing of biological material alleged to exist on certain pieces of physical evidence. He argued that DNA testing was not conducted on these items before trial, and that testing results would be exculpatory. Following this motion, the district court appointed counsel to file a proper motion for DNA testing. Following this petition, Holt's attorney and the State went through evidence at the Junction City Police Department and discovered that the exhibits had not been returned to the department. They then located the exhibits in a district court storage area in the basement of a detached building. The exhibits had been stored in unsealed cardboard boxes and plastic grocery sacks.

The physical evidence central to Holt's petition is:

- Exhibit 43, gloves.
- Exhibit 44, blue tire iron recovered with gloves.
- Exhibits 69A and 69B, right and left black shoes.
- Exhibit 183, Holt's black jeans with blood on them.
- Exhibit 228, cuttings from Holt's jeans.
- Exhibit 229, swab from the right shoe.
- Exhibit 230, swab from tire iron.
- Exhibits 231A and 231B, Holt's known blood stains.

On December 1, 2021, the district court ordered that these items be removed from storage and sent to the KBI to determine if the items were in a condition so that DNA testing on any biological material present could be performed. At a September 1, 2022,

status hearing, Holt's attorney informed the district court that the KBI lab requested an additional testing order showing why the evidence needed tested. As a result, the district court signed an order directing that the items be tested for DNA. At a November 2022 status hearing, Holt's attorney informed the district court that the KBI lab had expressed serious concerns about testing, because it lacked control samples and because of problems with the handling and storage of the exhibits.

In February 2024, the district court held an evidentiary hearing to discuss the practicality of testing. The State presented testimony from a biology case work supervisor at the KBI, Emily Draper. Draper first discussed what testing had been previously done and whether technology had progressed from the time of the initial testing. Draper explained that the KBI did not perform DNA testing in-house in 1993, so it had no record of any DNA testing being performed. She also explained that she believed that technology exists today that was not available in 1993-94.

We note that the State argues, for the first time on appeal, that the record shows that modern DNA testing methods were in fact utilized by a private lab in Holt's prosecution. However, issues not raised before the district court cannot generally be raised on appeal. See *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). Because we find consideration of the State's argument immaterial to the resolution of Holt's case, we deem the State's argument unpreserved. *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020) (appellate court has no obligation to review unpreserved claims on appeal).

Draper testified at the February 2024 evidentiary hearing that the exhibits had not been stored in such a way as to properly preserve biological material. Specifically, she explained that the exhibits being stored together in unsealed plastic grocery sacks could lead to cross-contamination, mold, rust, and degradation. Draper was also concerned about the lack of information regarding the chain of evidence. She testified that some of the items may have been handled multiple times, leading to additional DNA being added

4

or previously present DNA being wiped off. Draper's ultimate assessment was that DNA testing, under modern methods, could only potentially prove that Holt's DNA was present in the present day. Modern testing could not establish what other DNA had been removed or had degraded or what DNA was present in 1993-94. Therefore, the KBI's conclusion was that any present-day DNA testing could only produce inconclusive results.

Following the evidentiary hearing, the district court denied Holt's motion, holding that there was not a reasonable degree of scientific certainty that any DNA test results would be accurate. Holt appealed this denial.

DISCUSSION

*The district court correctly denied Holt's motion because no testing result could be exculpatory.*

A denial of a motion for DNA testing under K.S.A. 21-2512 typically occurs without an evidentiary hearing. Therefore, in most cases, the denial is a question of law subject to unlimited review. See *State v. Angelo*, 316 Kan. 438, 446, 518 P.3d 27 (2022); *Wimbley v. State*, 292 Kan. 796, 809, 275 P.3d 35 (2011).

Following an evidentiary hearing, however, we apply a bifurcated standard. We review the factual findings of the lower court under the substantial competent evidence standard, viewed in a light most favorable to the prevailing party, and disregarding any conflicting evidence or other inferences that might be drawn from the evidence. The conclusions of law based on those findings are subject to unlimited review. See *State v. Dooley*, 313 Kan. 815, 819, 491 P.3d 1250 (2021). To the extent that resolving Holt's appeal requires statutory interpretation, those issues present questions of law over which appellate courts have unlimited review. *State v. Betts*, 316 Kan. 191, 197, 514 P.3d 341 (2022).

5

The right to postconviction DNA testing is outlined in K.S.A. 21-2512, which provides, in relevant part:

"(a) Notwithstanding any other provision of law, a person in state custody, at any time after conviction for murder in the first degree as defined by K.S.A. 21-3401, prior to its repeal, or K.S.A. 21-5402, and amendments thereto . . . may petition the court that entered the judgment for forensic DNA testing (deoxyribonucleic acid testing) of any biological material that:

(1) Is related to the investigation or prosecution that resulted in the conviction;

(2) is in the actual or constructive possession of the state; and

(3) was not previously subjected to DNA testing, or can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results.

. . . .

"(c) The court shall order DNA testing pursuant to a petition made under subsection (a) upon a determination that testing may produce noncumulative, *exculpatory evidence* relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced." (Emphasis added.)

Under this statute, Holt must make a plausible claim that current DNA testing could provide some exculpatory evidence. K.S.A. 21-2512(c). "'DNA testing is intended to confirm or dispute the identity of individuals involved in or at the scene of a purported crime.' So DNA evidence may be exculpatory if it tends to establish innocence based on an individual's identity. [Citation omitted.]" *State v. Johnson*, 299 Kan. 890, 894, 327 P.3d 421 (2014). "A petitioner need not show with certainty that DNA testing of the specified items will produce noncumulative, exculpatory evidence. Instead, the

6

possibility of generating such evidence will suffice." *Angelo*, 316 Kan. at 462; *State v. Lackey*, 295 Kan. 816, 823-24, 286 P.3d 859 (2012) (concluding that the language used in K.S.A. 21-2512 shows that the Legislature believed the mere possibility of exculpatory evidence made testing worthwhile).

Holt contends that DNA testing of these exhibits would show that *only* his blood was present on the exhibits. He contends that a lack of any other person's DNA on the items would tend to prove he was not involved with either murder. *State v. Hernandez*, 303 Kan. 609, 620, 366 P.3d 200 (2016) ("To be exculpatory evidence, it need not definitively prove the petitioner's innocence but only tend to prove a disputed material fact.").

"Exculpatory" is a relatively low threshold to meet; however, evidence must still actually meet that threshold. See *Lackey*, 295 Kan. at 823-24. Contrary to Holt's suggestion, K.S.A. 21-2512(c) does not mandate testing whenever there is a mere allegation that testing could produce exculpatory evidence. District courts are responsible for assessing the potential exculpatory evidence that might be obtained from the requested testing, and this review may entail finding facts. See *Lackey*, 295 Kan. at 824. See also *Johnson*, 299 Kan. at 894 (DNA testing for third party biological material on a knife would not be exculpatory because the presence of third party did not undermine the defendant's undisputed guilt); *Wimbley*, 292 Kan. at 812 (additional testing of the murder weapon without concurrent testing of bodily fluid samples could not produce exculpatory evidence).

The district court carefully considered the KBI's testimony at the evidentiary hearing and found the condition of the exhibits to be materially degraded and corrupted. We agree that this finding is supported by substantial competent evidence. The district court also ultimately concluded "it is not scientifically possible . . . there is no reasonable degree of scientific—of a decent scientific result, of a considerable scientific result that

would result from an attempt to analyze for DNA at this time." In other words, the district court made a factual finding that any testing on the corrupted exhibits would be inconclusive and therefore the results could not be exculpatory as required by K.S.A. 21-2512(c). The lower court's factual findings are supported by substantial competent evidence, and its legal conclusion is sound.

Affirmed.

WILSON, J., not participating.