IN THE SUPREME COURT OF THE STATE OF KANSAS

Nos. 128,439
128,440
128,880

STATE OF KANSAS,
*Appellee*,

v.

HERBERT RUFF,
*Appellant.*

SYLLABUS BY THE COURT

K.S.A. 21-2512(a)(3) does not authorize DNA retesting merely because time has passed. It requires a petitioner to show new DNA techniques "provide a reasonable likelihood of more accurate and probative results" when that is disputed by the State or questioned by a court.

Appeal from Leavenworth District Court; CLINTON LEE, judge. Submitted without oral argument January 29, 2026. Opinion filed April 3, 2026. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, was on the brief for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Kris W. Kobach*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BILES, J.:  Herbert Ruff filed a pro se postconviction petition under K.S.A. 21-2512 seeking DNA testing and retesting in three rape cases. The district court denied his

request in each case, reasoning Ruff failed to show new DNA techniques provide a reasonable likelihood of more accurate and probative results warranting retesting under K.S.A. 21-2512(a)(3). Ruff appeals the district court's denials in two of these cases. We affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND

*Underlying facts relevant to this appeal*

In the first case, a jury convicted Ruff in 1995 of raping M.C. in 1993. According to the victim's testimony, an unknown man got into her apartment and sexually assaulted her. During the attack, he threatened to kill her and mentioned the "Crips." After he left, M.C. called police. Investigators found a single white sock at the crime scene and the word "Crips" written on a wall using a cream-like substance.

It is unclear how police linked Ruff to the assault, but they obtained search warrants for his residence and vehicle, recovering a white sock containing a used condom from a trash can in the house. The police also seized Ruff's jacket from his car. Forensic analysis confirmed the two socks were a matched pair, and the condom's DNA testing identified a male fraction matching Ruff and a female fraction matching M.C. Ruff initially denied knowing the victim but later claimed they had consensual sex in his car.

In the second case, a jury convicted Ruff for the 1993 rape of L.R. There, an anonymous caller to the TIPS hotline said Ruff was involved in several rapes. Police interviewed him, and he provided his blood sample. Preliminary test results showed his blood type matched the samples taken from L.R. and her clothing. Police obtained warrants to search his house and car, seizing a roll of duct tape, a knife, and a stocking cut up to resemble a mask. A forensic scientist examined a swatch from L.R.'s panties

2

containing seminal fluid matching the DNA to Ruff's blood sample. Ruff denied having sex with L.R.

*District court proceedings on DNA testing*

In 2020, Ruff filed a pro se petition under K.S.A. 21-2512, seeking DNA testing of numerous biological materials from his cases without specifying which should be tested for the first time or retested. He generally asserted retesting was warranted by the development and improvements in DNA-testing methods since his convictions. The district court appointed him counsel. Between September 2023 and October 2024, the court conducted seven hearings relevant on the matter. The first six were nonevidentiary, while the final one was evidentiary. Ruff attended all hearings in person and through counsel.

At the first hearing, the court asked counsel to explain how the 1990s testing was deficient and how modern methods would remedy those perceived flaws. Counsel only suggested older techniques were likely "less accurate just due to how technology works." The court noted the passage of time alone did not justify retesting and emphasized Ruff needed to show a new test would provide evidence unavailable at the original trials. Defense counsel could not specify any new techniques at that time and admitted "I might need to do some research."

Between the first and second hearings, Ruff filed a pro se motion to address the court's inquiry, stating:

> "Ruff's Argument is that RFLP (Restriction, Fragment, Length, Polymorphism) DNA testing was done on all Ruff's convictions; Which the Percentage of Accuracy on the (RFLP) DNA testing in 1993 was (99.9%) of Accuracy.

"Ruff's Argument is that Y.STR (Short, Tandem, Repeat) DNA testing is a newer DNA techique [*sic*] testing that provide [*sic*] a reasonable likelihood of more accurate and Probative Results than the (RFLP) DNA testing.

"The Percentage of Accuracy on the (Y. STR) DNA testing is (99.68%) of Accuracy today; Since (2013)."

During the second hearing, the court determined Ruff had not justified retesting because he cited accuracy rates indicating his proposed method would be less reliable than the original. It identified the only remaining issue was whether the State possessed any untested items. Defense counsel conceded no untested items remained in M.C.'s case but asserted some might exist in L.R.'s case. The State said the police had advised all evidence still in existence had been tested but would verify that fact again.

At the third hearing, the court agreed no untested items existed in M.C.'s case and reaffirmed the focus remained on identifying any untested items in L.R.'s case. At that point, defense counsel said something indistinct on the audio recording, but the court allowed him to "file whatever" he was planning.

During the fourth hearing, the court noted it had employed a piecemeal approach to determine whether to test or retest any items. It said it was "leaning towards a finding that there would be no retesting" because Ruff did not argue any new testing method would be superior. Neither Ruff nor his counsel challenged this but shifted their position in the M.C. case. His counsel argued, despite previous concessions, the cream spelling "Crips" on the wall and a female hair found on the jacket from his car remained untested. As for the hair, the court ruled it could not order testing because it was not in the State's possession. Ruff also suggested testing a tube marked with illegible writing from L.R.'s case that was listed in the State's existing items, but it was unknown what evidence the

4

tube contained or if it had been tested already. No further discussion of the cream followed.

The fifth and sixth hearings focused only on the tube. Ruff requested an evidentiary hearing to determine its contents and testing status. The court granted that request and asked both parties if there was anything further. Ruff offered no additional comment.

After the sixth hearing, the court issued its decision in M.C.'s case. It explained Ruff essentially requested "another round of DNA testing" because all existing materials already had been tested. The court held Ruff had not satisfied K.S.A. 21-2512(a)(3), finding:

> "[D]espite having numerous hearings in this case, neither Ruff nor his attorney have ever explained how Y-STR testing would yield more accurate and reliable results than RFLP testing. To the contrary, Ruff conceded in his pro se pleading that RFLP testing is 99.9% accurate, while Y-STR testing is only 99.68% accurate."

The court concluded, "Since Ruff has failed to demonstrate there is a newer, more reliable form of DNA testing, he is not entitled to have the existing biological samples retested."

Two months later, the court conducted an evidentiary hearing in L.R.'s case. After a former KBI scientist testified the tube most likely contained some of the underwear stain and had been tested, the court found the tube's DNA material had been tested. Then it offered Ruff a chance to present further evidence, which he declined. After the hearing, the court denied Ruff's request in L.R.'s case, concluding every existing biological

material had been examined using the RFLP method and Ruff failed to propose a more reliable method that would satisfy subsection (a)(3)'s requirement.

Ruff appealed. Our jurisdiction is proper because he received multiple sentences of 15 years to life in both cases. See K.S.A. 22-3601(b)(3) (permitting a direct appeal to Supreme Court when a life imprisonment is imposed); *Makthepharak v. State*, 298 Kan. 573, 574, 314 P.3d 876 (2013) (jurisdiction over appeal of postconviction motion lies with court that had jurisdiction to hear original appeal).

RUFF DID NOT MEET HIS STATUTORY BURDEN

Ruff presents just one issue: "[W]hether the district court erred in denying retesting of available DNA materials under K.S.A. 21-2512 because [he] failed to show newer DNA testing techniques may provide more accurate and probative results." As explained, we affirm the district court.

*Standard of review*

Both parties argue this appeal presents a question of law subject to unlimited review, believing the district court summarily denied Ruff's petition. But a summary denial occurs when a court's adjudication of a petition is based on the pleadings, the record of the underlying trial, and any legal arguments advanced at a nonevidentiary hearing. In such cases, appellate review is unlimited because appellate courts are in as good a position as the district court to assess the petition's merits. *State v. Angelo*, 316 Kan. 438, 446, 518 P.3d 27 (2022). That is not what happened here.

The district court held an evidentiary hearing, as well as six nonevidentiary hearings, during which the parties offered both legal and factual arguments. And in its

written rulings, the court made factual findings and then reached legal conclusions based on those findings, so the issue presented is not purely legal. First, Ruff factually asserted the passage of time established the superiority of current techniques at the first hearing and he compared RFLP testing to Y-STR testing in his pro se motion. Second, the district court found the party with the burden of proof did not meet a required factual condition.

When this happens, we apply a bifurcated standard of review, considering the district court's factual findings under the substantial competent evidence standard and subjecting its conclusions of law to unlimited review. *State v. Holt*, 321 Kan. 125, 128, 573 P.3d 665 (2025). In addition, we must interpret K.S.A. 21-2512(a)(3) to resolve who bears the burden of proof. That is a question of law over which we exercise unlimited review. *Angelo*, 316 Kan. at 446.

*Discussion*

Ruff disputes the district court's ruling that he bore the burden to show a new DNA technique qualified under K.S.A. 21-2512(a)(3). The statute is silent on who bears that burden. See *Bruner v. State*, 277 Kan. 603, 604-05, 88 P.3d 214 (2004) ("K.S.A. 21-2512 provides no procedure for requesting DNA testing."). He primarily relies on *Bruner*, 277 Kan. at 606, which held K.S.A. 21-2512 "merely requires the prisoner to allege" subsection (a)'s requirements, as well as its progeny, *Angelo*, 316 Kan. at 455, and *State v. Johnson*, 320 Kan. 402, 568 P.3d 858 (2025). Ruff claims he satisfied the (a)(3) requirement, as a matter of law, just by alleging it in his pro se petition. Evidentiary proof is not required, he continues, because a petitioner "is no DNA expert."

The State counters with three arguments. First, as to M.C.'s case, it claims Ruff cannot meet K.S.A. 21-2512(c)'s requirement that "testing may produce noncumulative, exculpatory evidence" because it was undisputed Ruff had sexual intercourse with M.C.

7

That may be true, but there is no factual finding or legal conclusion for us to review because the district court's written ruling did not address the matter.

The State's second claim has insurmountable difficulties as well. It argues for the first time on appeal Y-STR analysis cannot be considered "new" because it was already used in United States and European laboratories in the 1990s. Again, such a claim raises factual questions that appellate courts do not decide on their own. See *Holt*, 321 Kan. at 127 (refusing to consider a factual assertion about the DNA testing methods used to prosecute the defendant raised for the first time on appeal); *State v. Yazell*, 311 Kan. 625, 627, 465 P.3d 1147 (2020) ("Kansas appellate courts do not make factual findings. This task is reserved for district courts, where evidence is offered and tested.").

The State's third argument, though, needs a closer look. It contends Ruff failed to meet his burden despite having the chance to do so. It relies on *Wimbley v. State*, 292 Kan. 796, 812, 275 P.3d 35 (2011), in which the court affirmed the district court summarily denying a petition for DNA retesting because the petitioner failed to carry his burden under subsection (a)(3). The State also points to an unpublished Court of Appeals decision, *State v. Blake*, No. 123,836, 2022 WL 881825, at *6 (Kan. App. 2022) (unpublished opinion), which held a "conclusory statement that more than 15 years has passed since the original DNA testing is not enough" to order retesting.

At a glance, *Wimbley* appears controlling. But the *Wimbley* court did not evaluate K.S.A. 21-2512(a) to determine which party bears the burden. It simply concluded the petitioner's claims were "totally unsupported, conclusory, and insufficient" to satisfy the statute. *Wimbley*, 292 Kan. at 812. In fact, five years later, the court in *State v. Hernandez*, 303 Kan. 609, 615, 366 P.3d 200 (2016), observed no caselaw to date had resolved the issue. And in 2022, the court addressed the burden question in *Angelo*, 316 Kan. at 440, 459, but its holding appears limited to subsection (a)(2).

8

Based on this, Ruff's case suggests we should decide here whether *Angelo*'s holding extends to subsection (a)(3). We begin by reviewing the statutory language. K.S.A. 21-2512(a) states:

"[A] person in state custody, at any time after conviction for murder in the first degree . . . or for rape . . . may petition the court that entered the judgment for forensic DNA testing (deoxyribonucleic acid testing) of any biological material that:

"(1) Is related to the investigation or prosecution that resulted in the conviction;

"(2) is in the actual or constructive possession of the state; and

"(3) was not previously subjected to DNA testing, or can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results."

K.S.A. 21-2512(c) also provides: "The court shall order DNA testing . . . upon a determination that testing may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced."

In 2004, subsections (a) and (c) were considered for the first time in *Bruner* after the district court summarily denied petitioner's request for DNA testing. All subsequent caselaw has developed from *Bruner*, which held subsection (a)

"*merely requires the prisoner to allege* [in their petition] that the evidence is related to the investigation or prosecution of his or her conviction, that the State has possession or constructive possession of the evidence, and that the evidence was not previously subjected to DNA testing or that it could be tested using new DNA testing techniques." (Emphasis added.) *Bruner*, 277 Kan. 603, Syl. ¶ 4.

9

This is the basis for Ruff's contention he met his burden by alleging K.S.A. 21-2512's elements in his petition. But *Bruner*'s low bar applied only at the pleading stage, so it is inapplicable because Ruff survived the pleading stage and received an evidentiary hearing.

Seven years after *Bruner*, in 2011, the *Wimbley* court addressed subsection (a)(3) specifically. But as mentioned, the court did not closely analyze the statute; it simply held the petitioner failed to establish the new technique requirement. *Wimbley*, 292 Kan. at 812. In fact, contrary to *Bruner*, the *Wimbley* court held mere allegations in the petition failed to survive the pleading stage, which would impose a heavier burden at the pleading stage than both *Bruner* and any later cases. This appears to make *Wimbley* an outlier.

The court again considered subsection (a)(3) in *State v. Lackey*, 295 Kan. 816, 286 P.3d 859 (2012), during which the court evaluated the case under *Bruner* and, in doing so, outlined a three-step process a district court must follow after receiving a petition for DNA testing: first, notify the State a petition was filed; second, determine whether the biological material qualifies for testing or retesting under K.S.A. 21-2512(a)(1)-(3); and, third, decide whether testing may produce noncumulative, exculpatory evidence under subsection (c). In carrying out the second and third steps, the court must consider whether to appoint counsel under subsection (e) and whether to conduct an evidentiary hearing. 295 Kan. at 820-21. This evidentiary hearing, however, is not statutorily mandated, as only subsection (f) requires one once DNA testing results are obtained. See K.S.A. 21-2512(f)(2)(A) (mandatory hearing), (f)(3) (discretionary hearing). Notably, *Lackey* did not prescribe how a district court should resolve disputes under subsections (a) and (c).

In 2016, the court decided *Hernandez* and reaffirmed *Bruner*'s low threshold for petitioners to allege at the pleading stage and *Lackey*'s three-step framework. *Hernandez*,

10

303 Kan. at 615, 618-19. The *Hernandez* court observed K.S.A. 21-2512 authorizes a qualifying inmate to petition for DNA testing but does not specify who bears the burden under subsection (a)(2). Acknowledging the statute's silence, it decided not to resolve the burden issue since the parties did not dispute the biological materials' existence. 303 Kan. at 614-15. Still, its conclusion that the statute's text does not allocate the burden applies equally to subsections (a)(1) (biological material related to underlying crimes' investigation or prosecution) and (a)(3) (biological material that was untested or capable of retesting). See *Bruner*, 277 Kan. at 604 ("K.S.A. 2003 Supp. 21-2512 provides no procedure for requesting DNA testing, beyond stating" who qualifies and what items qualify for testing).

In 2022, the court in *Angelo* addressed the evidentiary burden deferred by the *Hernandez* court for subsection (a)(2). The *Angelo* court outlined a three-part process leading to a district court's determination to order testing:

"First, the petitioner must allege in the petition that biological material satisfying the threshold requirements for testing under [subsection] (a) exists. Second, once the State has notice of the petition, the statute requires the State to preserve any biological material it previously secured in connection with the case and identify such material in its response. Finally, once the response is filed, the parties may agree that the State has identified and preserved all known biological material and proceed to argue whether testing that identified biological material may produce noncumulative, exculpatory evidence warranting testing under [subsection] (c). But if the parties continue to dispute the existence of such biological material, they can present evidence to the district court for appropriate fact-finding. In that circumstance, the petitioner, as the moving party, has the burden to show biological material satisfying the threshold requirements of subsection (a) exists." *Angelo*, 316 Kan. 438, Syl. ¶ 2.

*Angelo*'s progression differs from the one in *Lackey* by assigning responsibilities to the parties: the petitioner must allege the statutory requirements in their petition; the

11

State must preserve any biological material in its possession and identify such material in its response; and then the parties either argue under subsection (c) or, if they dispute the existence of the material under subsection (a)(2), the petitioner bears the burden to prove it exists. *Lackey*, on the other hand, discusses the district court's responsibility: after receiving a petition, the court notifies the State under subsection (b), determines whether the material qualifies under subsection (a), and then decides under subsection (c).

In 2025, the court in *Johnson* applied *Angelo*. There, after an evidentiary hearing, the district court denied the petitioner's DNA retesting request, finding he failed to show the State possessed the item he wanted retested. The *Johnson* court affirmed, reasoning the petitioner was given the opportunity to call witnesses to support his allegation, but did not take it. *Johnson*, 320 Kan. at 409.

As seen, we have not yet extended *Angelo*'s imposition of the evidentiary burden on the petitioner under subsection (a)(2) to subsection (a)(3). But Ruff advances that question, arguing *Angelo* should be limited to (a)(2). His argument is unpersuasive—the same approach should apply when a dispute arises under any requirements of subsection (a). Nothing in K.S.A. 21-2512 differentiates among subsections (a)(1), (a)(2), and (a)(3).

*Angelo* resolved the statutory silence by applying a general rule that the movant bears the burden of proof in the context of subsection (a)(2). *Angelo*, 316 Kan. at 455. That principle applies with equal force to disputes under subsections (a)(1) and (a)(3). See *In re K.E.*, 294 Kan. 17, 23, 272 P.3d 28 (2012) (the burden of proof generally rests with the moving party or the party asserting the affirmative of an issue).

Whether Ruff satisfied subsection (a)(3) was raised by the district court, in fulfilling its statutory duty to determine whether the biological material sought for retesting met the statute's requirements. See *Lackey*, 295 Kan. at 820-21 (third step of

three-step process). The court declined defense counsel's urging to consider the passage of time as enough justification for retesting and told Ruff he must meet the new technique requirement. And before issuing its final orders, the court repeatedly afforded Ruff opportunities to meet his burden.

The record reflects, during the third hearing, the court explicitly allowed Ruff to "file whatever" he wished. At the fourth hearing, the court said it was "leaning towards a finding that there would be no retesting," which neither Ruff nor his counsel challenged. At the fifth and sixth hearings, the court again asked if Ruff had anything more to present. Finally, at the close of the evidentiary hearing, it invited Ruff to present any more arguments, even offering to schedule another hearing. Ruff's counsel responded, "No." The district court issued its ruling only after it did all this.

In its written order, the district court made a factual finding that Y-STR (new) testing is less accurate than RFLP (old) testing and, based on that finding, concluded Ruff failed to demonstrate he was entitled to have the existing biological materials retested. This finding is supported by Ruff's concession, and the court's legal conclusion is consistent with K.S.A. 21-2512(a)(3).

We hold the district court correctly ruled subsection (a)(3) does not authorize retesting merely because time has passed. It requires showing the new technique provides a reasonable likelihood of more accurate and probative results. Had the Legislature intended the passage of time alone suffices, it would have said so. See *State v. Gray*, 306 Kan. 1287, 1294, 403 P.3d 1220 (2017) ("[Courts] read the statutory language as it appears, without adding or deleting words."). The district court conducted multiple hearings and repeatedly emphasized Ruff bore the burden, which he failed to carry.

Judgment of the district court is affirmed.

13

LUCKERT, J., not participating.